J. D. MURRAY

*v.*

STATE OF TENNESSEE.

377 S.W.2d 918.

(*Knoxville,* September Term, 1963.)

Opinion filed March 5, 1964.

ARMSTRONG & SANTORE, Greeneville, JOHN A. ARMSTRONG, Greeneville, of counsel, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

This is a criminal case in which the only question is whether certain medical testimony in an incest prosecu-

tion was erroneously admitted into evidence in the trial court.

Plaintiff in error, J. D. Murray, referred to as defendant, was indicted for committing incest with his daughter, Linda Faye Murray (T.C.A. sec. 39-705). He was found guilty and his punishment fixed by the jury at not less than five nor more than 15 years in the penitentiary, and judgment entered accordingly.

He has appealed in error and assigns only one error: that the trial court committed reversible error in permitting a physician to testify that an incestuous union was one of the things that could cause deformity to a child born to a sixteen year old girl.

Defendant has not assigned error regarding the sufficiency of the evidence. We, therefore, need not discuss or comment upon the facts further than to show the importance and effect of the error complained of by this assignment.

The State's evidence showed that defendant forced his sixteen year old daughter, Linda Faye, the prosecutrix in this case, to have sexual intercourse with him on June 19, 1962. It also showed that he had been forcing her into such a relationship with him since she was eight years old that she had submitted only because of her fear of him. Prosecutrix's testimony was substantially corroborated by her brother and sister.

Defendant denied ever having any sexual relations with his daughter, and testified that the prosecutrix had conspired with her sister to get him convicted because of a controversy over the baby of prosecutrix's sister. Defendant's wife was loyal to her husband, but did admit

on cross examination that the subject of his relations with prosecutrix had been discussed between them.

In the trial court Dr. C. D. Huffman, the County Physician of Greene County, testified for the State that he was in attendance when a baby was born to the sixteen year old prosecutrix; that the baby was malformed internally in its central nervous system to the extent that it only lived forty-eight hours; and that an incestuous union would be one of the causes of deformity in a child borne by a sixteen year old mother.

Defendant objected to this evidence on the alleged ground that Dr. Huffman was unqualified to make such a statement since he did not hold a special degree in the field of genetics. It was further objected to on the alleged ground that it is ''highly speculative and highly prejudicial to the defendant, being purely an opinion and speculation.''

While it is true as a general rule that opinions of witnesses are not admissible in the trial court, it is always permissible to permit a qualified expert to state a conclusion or give an opinion on a subject on which the trial court and the jury need the help of expert opinion; and on which the expert is qualified to speak because it is peculiarly a matter of superior knowledge on his part. *National Life & Accident Ins. Co. v. Follet*, 168 Tenn. 647, 655, 80 S.W.2d 92 (1935).

In this case as a preliminary matter the trial judge properly examined Dr. Huffman out of the presence of the jury to determine his qualifications as an expert. Dr. Huffman testified to the court that it was common knowledge among practicing physicians that several causes of deformity of the central nervous system existed; that,

among other things, an incestuous relationship could cause such a deformity; that in the instant case he had eliminated all other known causes; and that in his opinion an incestuous union was the cause of the deformity in prosecutrix's baby.

■ We think that the trial judge was correct in permitting Dr. Huffman to give testimony as an expert on the causes of deformity of the nervous system for two reasons.

First, we think that he was properly qualified upon the basis of the preliminary interrogation to give his opinion as an expert on the causes of deformity in the child of a sixteen year old mother. Moreover, as a further precaution, the trial judge instructed the jury that this medical testimony was not evidence in itself against the defendant, but only some evidence as to why the prosecutrix's baby was born in a malformed condition.

■■ Secondly, we have held that the qualification of a witness as an expert is a matter left largely within the sound discretion of the trial court. *McElroy v. State,* 146 Tenn. 442, 242 S.W. 883 (1922). No obvious error or abuse of the trial court's discretion is shown in the record of this case. Therefore, we should not disturb the court's finding that Dr. Huffman was qualified as an expert on this subject. *McElroy v. State,* supra.

■ Defendant also contends that this evidence is inadmissible because it is highly speculative. This Court has held that expert medical testimony must always be more or less speculative in nature, but that this does not mean that it is inadmissible. *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 476, 260 S.W.2d 182 (1952).

In his multi-volume treatise on Evidence, Professor Wigmore addressed himself to the problem of the admissibility and probative value of expert testimony. He said:

"The data of every science are enormous in scope and variety. No one professional man can know from personal observation more than a minute fraction of the data which he must every day treat as working truths. Hence, a reliance on the reported data of fellow-scientists, learned by perusing their reports in books and journals, *the law must and does* accept this kind of knowledge from scientific men" (italics ours). 2 Wigmore, Evidence, Sec. 665b (3rd Ed., 1940).

■ It is also contended that this evidence is inadmissible on the alleged ground that it is prejudicial to defendant. We do not think that this medical testimony was prejudicial to defendant, but even if it were, relevant evidence is not made inadmissible simply because it might be prejudicial.

■ Nor can it be argued that this evidence was irrelevant, and, therefore, inadmissible for the lack of probative value. Incest, being a statutory offense, the essential elements necessary to constitute the crime are found in T.C.A. sec. 39-705. There, we find that the essence of the offense is marriage or sexual intercourse with a relative within the prohibited line of consanguinity.

■ Dr. Huffman's medical opinion concerning the causes of deformity to children born to sixteen year old mothers was, therefore, relevant because it was circumstantial evidence which tended to show that the prosecutrix had entered into an incestuous relationship. Furthermore, evidence which is relevant to the issues

involved is not made irrelevant merely because it might be prejudicial. *Frost v. State,* 203 Tenn. 549, 555, 314 S.W.2d 33 (1958).

■ Finally, we think that the expert opinion given by Dr. Huffman had some probative value, and that after it was admitted, it was left to the jury upon proper instructions to determine its weight and sufficiency. We further think that the evidence of the State, if believed by the jury, is more than sufficient to convict defendant under T.C.A. sec. 39-705. The jury apparently believed that evidence and there being no error on the record, the conviction below must be affirmed.

On Petition to Rehear

Defendant has filed a petition to rehear complaining that we erred in overruling his one assignment of error. The petition points out no matter of law or fact overlooked, cites no new authority, and presents no new argument. It is but a reargument of matters already fully considered and determined by this Court in our former opinion. The petition is, therefore, denied at the cost of petitioner. Rule 32.

Petition denied.