STATE of Tennessee, Appellee,

v.

**Willie Ed TAYLOR, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 7, 1982.

Permission to Appeal Denied by the Supreme Court Dec. 30, 1982.

---

William M. Leech, Jr., Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, James G. Woodall, Asst. Dist. Atty. Gen., Jackson, for appellee.

Charles Patterson, Jackson, for appellant.

## OPINION

WALKER, Presiding Judge.

Tried in Madison County under a four-count indictment, the appellant, Willie Ed Taylor, was found guilty of (1) aggravated sexual battery on Judith Cravens, and sentenced to 12 years in the penitentiary; (2) aggravated sexual battery on Cynthia Cravens, and sentenced to 15 years; (3) robbery of Judith Cravens by means of a deadly weapon, and sentenced to 10 years; and (4) robbery of Cynthia Cravens by means of a deadly weapon, and sentenced to 10 years. The trial judge ordered consecutive sentences for the sexual battery cases. He fixed the robbery convictions concurrent to each other but consecutive to the sexual battery convictions, making a total term of 37 years in the penitentiary.

On his appeal Taylor contends that the court erred in permitting the state's witnesses, Ms. Melissa Brown and Dr. Robert Glynn Watson, to testify as experts concerning his mental condition, that the court erred in permitting these witnesses to remain in the courtroom after he had asked for their exclusion, that the court improperly commented on the testimony of these witnesses, that the court erred in refusing to instruct on diminished capacity, that the evidence is insufficient, and that the court erred in ordering consecutive sentences.

We find no reversible error and affirm the convictions.

The evidence showed that on March 22, 1981, Ms. Judith Cravens and her 15-year-old daughter lived together in Madison County. They had lost a young billy goat, and in an effort to find him, Ms. Cravens placed an advertisement in *The Jackson Sun* on March 16. It contained Ms. Cravens' telephone number and the address of her parents.

On March 22 the appellant called Ms. Cravens indicating that the goat would be available to her for a reward. Ms. Cravens told him that she would pay $10 and, in turn, Taylor told her to come to 121 Gates

about 11:00 a.m. Mrs. Cravens and her daughter went to the address at that time but Taylor told them to return at 12:00 or 12:30 p.m. They went back home and received another call from Taylor and they came back to the residence on Gates. When they arrived Taylor asked them inside and said he would go and get the goat.

Instead of returning with the goat, Taylor burst into the room armed with a butcher knife and a rifle which, unknown to Mrs. Cravens and her daughter, was actually a BB gun. He threatened to cut their throats and forced them to disrobe completely. He then compelled Ms. Cravens to tie Cynthia's hands behind her back and her legs together. He ordered Ms. Cravens to spread her legs and undertook to have sexual relations with her but was unable to obtain an erection. He rubbed Cynthia's legs, commenting on her pretty skin, and inserted his finger into her private parts. After this he ordered Judith and Cynthia to empty their purses and took several dollars from Judith and a religious medal and bracelet from Cynthia. Ms. Cravens offered to write a check in an effort to prevent any further attack on her daughter.

Taylor threatened to kill Ms. Cravens and her daughter if they told what had occurred, reminding them that he had their telephone number and knew where they lived. After they returned home, he continued to call, telling them not to tell about these events. Ms. Cravens called the police the next day, fearing that someone else would be killed or injured by Taylor.

When officers came to 121 Gates, Taylor told them that his name was Willie Green and refused to admit them to his home. After getting a warrant, the officers obtained the BB gun and butcher knife Taylor had used in the assaults.

Taylor did not testify. His defense was insanity. He was 18 years old at the time of his conduct in question.

In support of his claim of insanity, Taylor called Dr. Alvin J. Summar, a psychiatrist and medical director at Jackson Mental Health Center. Pursuant to a court order, Dr. Summar evaluated Taylor on July 21 and found him competent to stand trial. He thought that Taylor was likely competent at the time of the offenses. He knew that Taylor had been a patient at the mental health clinic on a once-a-month basis when between the ages of ten and 12 and had been a patient at Western Mental Health Institute and had some treatment at Youngstown, Ohio. His examination took about an hour and he was unable to devote the week or ten days necessary for a complete evaluation. From his examination, Dr. Summar thought that Taylor's mental illness might affect his knowledge of the true wrongfulness of his conduct but, on the other hand, it might not. For that reason he recommended further evaluation in another state institution.

The jail administrator testified about Taylor's aggressive conduct while confined there. Taylor would attack much larger prisoners and was unable to accept things which he was unable to change. He thought Taylor was "off" mentally.

Taylor's brother testified about unusual behavior of the appellant and that he had a mental problem. Taylor received social security benefits as a result of his mental incapacity and the brother handled those funds.

The operator of a foster home testified about Taylor's conduct when he was 11 years old. As a result of the difficulties with his conduct, he was sent to Western State Hospital for some months. Those records were introduced by stipulation. He was admitted because he was disruptive in a foster home and was fighting and failing school. His final diagnosis was mild mental retardation (although there was no evidence of psychological testing) associated with psycho-social and environmental deprivation.

As a result of Dr. Summar's evaluation and recommendation on August 7, the trial court sent Taylor to the Forensic Services Division of the Middle Tennessee Health Institute. In rebuttal the state presented Ms. Melissa Brown, a clinical specialist in psychiatry, and Dr. Robert Glynn Watson, a

clinical psychologist. Both were on the staff of Forensic Services of this Health Institute. Forensic Services is a division of a psychiatric hospital used primarily to evaluate people charged with violent felonies.

Ms. Brown obtained a B.S. in Nursing at Vanderbilt University in 1973 and a Master of Science in Psychiatric Nursing there in 1974. She was certified as a mental health nurse practitioner at Meharry Medical College in 1976 and had subsequently done post-graduate work for a doctorate degree. She had responsibility for assessing the mental status of individuals admitted to the hospital and was the coordinator of the evaluation unit in which Taylor was placed. This included coordinating all of the disciplines involved in the evaluation—that is, the psychiatrists, psychologists, social workers and nursing staff. She had participated in 600 to 800 evaluations such as that rendered with regard to the appellant. The trial court held her an expert in her field.

Ms. Brown testified in detail as to the evaluation procedure followed over five and a half weeks. In her opinion, Taylor was not suffering from a mental illness and he was capable of conforming his conduct to the requirements of the law on March 22, 1981. He had an anti-social personality. Both she and Dr. Watson found that he was malingering—that is, faking insanity.

Dr. Watson received a Ph.D. in Psychology from George Peabody College and was licensed to practice clinical psychology in 1972. He was certified by the Department of Mental Health and Mental Retardation in 1975 to do forensic evaluations for courts of law. He was employed as a clinical psychologist 1971–1979 at a mental health center. In 1979 he left there to accept employment with the state in forensic services. He had done about 300 forensic evaluations of patients. Both he and Ms. Brown had testified on numerous occasions as expert witnesses.

With the exception of a two week vacation period, Dr. Watson was involved with Taylor's evaluation from his admittance until his discharge. The appellant objected to Dr. Watson's qualifications on the ground that he was not a board certified psychiatrist. The trial judge overruled the objection and held Dr. Watson an expert in his field.

According to Dr. Watson the appellant was not mentally retarded and, although he had a personality disorder, he did not have mental illness. The personality disorder did not affect Taylor's knowing the true wrongfulness of his acts and did not render him incapable of conforming his conduct to the requirements of the law.

■ The determination of who is an expert witness is within the sound discretion of the court. *Wade v. State,* 529 S.W.2d 739 (Tenn.Cr.App.1975); *Murray v. State,* 214 Tenn. 51, 377 S.W.2d 918 (1964). We find no abuse of that discretion in the trial judge holding Ms. Brown and Dr. Watson to be experts.

Taylor complains that the failure of the trial court to exclude the state's rebuttal witnesses from the courtroom during his presentation of proof was error.

■ The rule excluding witnesses from the courtroom during trial does not apply to rebuttal witnesses. *Bryant v. State,* 503 S.W.2d 955 (Tenn.Cr.App.1973). Furthermore, placing witnesses under the rule or exempting them from the rule is within the sound discretion of the trial judge. His action will not be reversed unless it is made to appear that such abuse worked to the prejudice of the complaining party. *McCravey v. State,* 2 Tenn.Cr.App. 473, 455 S.W.2d 174 (1970). The appellant was not prejudiced here.

■ We find no improper remarks of the trial judge during the cross-examination of Ms. Brown and Dr. Watson that could have affected the verdict.

■ Taylor complains because the trial judge declined his special request to instruct the jury on diminished capacity. The court instructed the jury in accordance with the essential requirements of *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), and with T.P.I.-Crim. 36.06. Although he says there

is little authority in this state for his position, he urges us to approve his requested instruction. The defense of diminished capacity is not recognized in this state. *State v. Croscup*, 604 S.W.2d 69 (Tenn.Cr.App. 1980). The court did not err in declining this request.

■ There was ample evidence to support the jury's conclusion that Taylor was sane at the time the offenses occurred and that he was guilty of each of them. T.R. A.P. Rule 13(e).

In ordering consecutive sentences, the trial judge held that the appellant is a dangerous offender and a multiple offender, giving his reasons why Taylor fit these classifications. Taylor insists that the court erred in finding both classifications.

■ The proof showed that Taylor, wielding a gun and a butcher knife and threatening to use those weapons to kill, forced two women, one of them a 15-year-old child, to strip totally naked and allow him to touch their private parts and otherwise abuse them. Using the same weapons, he robbed both women. When he released them, he threatened to kill them if they told anyone of his crimes and he continued to place threatening phone calls to them at their residence. His crimes indicated a total lack of regard for two human lives in particular and human life in general. The details of the crimes of aggravated sexual battery make clear that aggravating circumstances were present. For these reasons, the trial judge properly held that Taylor is a dangerous offender and merited consecutive sentences.

All issues are found to be meritless and the convictions are affirmed.

DUNCAN and BYERS, JJ., concur.