## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**October 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

JOY DAWKINS ROY and SAM )
D. DAWKINS, et ux, )
)
)
)
Plaintiffs/Appellees, ) Madison Circuit No. 61907 T.D.
)
VS. ) Appeal No. 02A01-9809-CV-00247
)
W. T. DIAMOND, JR., )
)
)
Defendant/Appellant. )

APPEAL FROM THE CIRCUIT COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE
THE HONORABLE J. STEVEN STAFFORD, JUDGE

**LLOYD R. TATUM**
**TATUM & WEINMAN**
Henderson, Tennessee
Attorney for Appellant

**J. HOUSTON GORDON**
Covington, Tennessee
Attorney for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

In this legal malpractice case, W.T. Diamond Jr. appeals from a jury verdict entered against him in the Circuit Court of Madison County awarding plaintiffs Joy Dawkins Roy and Sam D. Dawkins $68,800 in compensatory damages and $25,000 in punitive damages.

**Facts and Procedural History**

This case involves claims against W.T. Diamond Jr. ("Diamond" or "Appellant") arising from Diamond's role as executor and attorney for the estate of Jennie Ida Buck ("Buck" or "Deceased"). The proceedings which are pertinent to this appeal took place over several years in both the probate section of the General Sessions Court of Madison County and the Madison County Circuit Court, as well as a disciplinary proceeding against Diamond conducted by the Board of Professional Responsibility.[1]

*I. Probate Court Proceedings*

The long and confusing history of this case began with the death of Jennie Ida Buck on March 21, 1992. Buck left a holographic will in which, among other things, she appointed Diamond as executor. On April 10, 1992, Diamond admitted Buck's will to probate in common form and was issued letters testamentary. Following a three year period of alleged inaction and misuse of estate funds, Sam Dawkins, a named beneficiary, filed a petition in probate court seeking to remove Diamond as executor. The petition alleged, *inter alia*, that Diamond had notified none of the estate's heirs of the probate proceedings, filed no inventory of the estate, failed to maintain the residence, and misappropriated the estate's funds. In May 1995, administrators of the estate of Earl Dawkins, also a named beneficiary, filed a motion to compel inventory and accounting against Diamond. An accounting revealed that Diamond had made approximately $60,100 in disbursements to his law firm from the estate of the deceased without approval of the probate court. The probate court ordered Diamond to reimburse the estate. After several failed attempts at reimbursement, Diamond eventually tendered a cashier's check in an

---

[1] As a result of his actions in handling the estate of Jennie Ida Buck, Mr. Diamond was the subject of a Petition for Discipline brought by the Board of Professional Responsibility. A Hearing Panel made various findings of fact, and recommended that Mr. Diamond be disbarred. The only issue raised by the disciplinary proceeding relates to its use as evidence in Diamond's malpractice suit.

amount sufficient to repay the estate for money he had removed.

In July 1995, the petition to remove Diamond as executor was granted, and Sam Dawkins and Joy Roy ("Co-administrators" or "Plaintiffs") were appointed as co-administrators of Buck's estate.[2] Diamond subsequently filed a petition, to which the new co-administrators excepted, seeking fees and expenses for his services rendered. In March and April 1996, hearings were held in the probate court, at which time the co-administrators sought payment of $13,317.50 in attorney fees and $17,566.50 in administrators fees. They also asserted that Diamond should reimburse the estate for fees and expenses incurred by the co-administrators in trying to get Diamond to account for his receipts and disbursements.

On August 21, 1996, the Probate Court issued a memorandum opinion, which indicated that the fees Diamond claimed were excessive and the time upon which he based his fees was wasteful. As to the fees claimed by both parties, the probate court stated, "the fees to which the executor (*i.e.*, Diamond) would have been allowed by the court for services rendered to the estate would be approximately equal to that incurred by the personal representatives and their attorney, so that there is no recovery by either party on that issue." The opinion further stated, "[t]he court makes no finding as to damages incurred by the estate due to the alleged malfeasance of the Executor and the resulting waste and deterioration cost thereby, since it is the subject of a separate action pending in the Circuit Court of Madison County, Tennessee." The probate court entered an order of final judgment on February 27, 1997.

## II. Circuit Court Proceedings

In April of 1995, Sam Dawkins and Elizabeth Dawkins commenced a *pro se* action against Diamond in Madison County Circuit Court for damages resulting from his failure to perform his duties as attorney and executor for Buck's estate. Subsequently, on October 18, 1995, Joy Roy and Sam Dawkins commenced a legal malpractice action

---

[2] Roy was the niece of the deceased.

against Diamond for "malfeasance" in his capacity as attorney and executor for Buck's estate. Diamond sought dismissal of the second case because the previous *pro se* suit against him was still pending.

On August 14, 1997, an order was entered non-suiting the first circuit court action. On that same date, the court denied Diamond's motion to dismiss the second action. The second action went to trial and a jury awarded the plaintiffs $68,800 in compensatory damages and $25,000 in punitive damages. Diamond filed a motion for a new trial claiming, *inter alia,* that the court erred in failing to dismiss all claims for damages for "additional fees and expense charged to the estate of Jennie Ida Buck" because such claims were previously litigated before the probate court. Alternatively, Diamond asked that the Circuit Court reduce the award to $32,800.[3] Diamond's motions were denied and he appealed to this court presenting the following issues for determination:

> 1) Whether the trial court erred by refusing to dismiss the plaintiffs' damage claim for additional fees and expense charged to the estate of Jennie Ida Black.
>
> 2) Whether the trial court erred in denying Diamond's motion to dismiss for prior suit pending.
>
> 3) Whether the trial court erred in permitting plaintiffs' counsel to introduce into evidence the findings of fact and judgment from a professional responsibility disciplinary proceeding.
>
> 4) Whether the punitive damages award was supported by the evidence.

**Law and Analysis**

*I. Damage claim for administration fees and attorney fees*

The jury awarded the plaintiffs $68,800 in compensatory damages, which were broken down into two components. Thirty-two thousand dollars ($32,000) represented damages for the "deterioration and waste of the assets of Jennie Ida Buck" caused by the Defendant, and $36,000 was awarded for damages "resulting from additional fees and expense charged to the Estate of Jennie Ida Buck." It is the latter amount of $36,000 which the Appellant challenges. Appellant claims that the trial court erred in allowing the

---

[3] This figure represents the amount of the total judgment, $93,800, minus the punitive damages award of $25,000 and the award of $36,000 for attorney's fees and administrator's fees incurred by the plaintiffs in the execution of the estate.

4

jury to consider the plaintiffs' claim for additional fees and expenses. Appellant argues that this issue was fully litigated in the probate court and was, therefore, barred by either *res judicata* or collateral estoppel.

The Tennessee Supreme Court described *res judicata* and its related counterpart, collateral estoppel, as follows:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

Goeke v. Woods, 777 S.W.2d 347, 349 (Tenn.1989) (quoting Massengill v. Scott, 738 S.W.2d 629, 631 (Tenn.1987)).

Res judicata and collateral estoppel apply only if the prior judgment concludes the rights of the parties on the merits. A.L. Kornman Co. v. Metropolitan Gov't of Nashville & Davidson County, 391 S.W.2d 633, 636 (Tenn. 1965). A party defending on the basis of res judicata or collateral estoppel must demonstrate that: 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues. Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446 (Tenn. 1995) (citing Scales v. Scales, 564 S.W.2d 667, 670 (Tenn. App. 1977). In this regard, the only issue raised before this court is whether the decision of the probate court regarding "fees and expense" was identical to the claim in the circuit court for "additional fees and expense." Although the use of the words "fees and expense" may imply that the answer is yes, this question does not turn on the choice of language.

The Tennessee Supreme Court, in King v. Brooks, stated that "[u]nder the doctrine of collateral estoppel, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation." 562 S.W.2d 422, 424 (Tenn. 1978) (citing Shelley v. Gipson, 400 S.W.2d 709 (Tenn. 1966); See also A.L. Kornman Co. v. Metropolitan Government of

5

<u>Nashville and Davidson County</u>, 391 S.W.2d 633 (Tenn. 1965). In the present case, the probate court entertained two issues that are relevant to this appeal. First, Diamond had filed a petition seeking fees and expenses he incurred as the executor and attorney for the estate of Jennie Ida Buck. Also, the new co-administrators filed a motion seeking reimbursement of $21,522 in fees and expenses from Diamond, as well as additional fees that would be incurred as a result of Diamond's alleged malfeasance. On the issue of fees and expenses due both parties, the probate court stated:

> 1. The Petition for Fees and Expenses filed by W.T. Diamond, Jr., and the Motion for Reimbursement of Fees and Expenses filed by the current Co-Administrators are each hereby granted in part and denied in part. The Court holds, in accordance with its Memorandum Opinion, *that the amount of fees and expenses to which Mr. Diamond is entitled and the amount of fees and expenses as to which the current Co-Administrators are entitled to reimbursement are the same and that said sums should be set off*, one against the other, with neither party entitled to additional recovery on their respective petition and/or motion.
>
> 2.The Exceptions to Accounting filed by the current Co-Administrators are disposed of as follows:(a)to the extent that said Exceptions to Accounting constitute *claims for damages* that are the subject of a separate action pending in the Circuit Court of Madison County, Tennessee, *this Court declines herein to make a ruling on the same*, finding that the Circuit Court is the appropriate forum for those claims to be determined;(b)in all other respects, the Exceptions to Accounting are denied and dismissed.

(emphasis added).


The appellees characterize the $36,000 as damages that resulted from Diamond's malfeasance in his role as executor and attorney. Through this characterization, appellees argue that the $36,000 judgment is not barred because the probate court specifically made no finding as to damages. This is undoubtedly a true statement of what the probate court said. It is also true that the $36,000 was meant to cover damages caused by Diamond's malfeasance. However, those "damages" come in the form of fees and expenses incurred by the co-administrators and their attorney. In fact, the pertinent jury interrogatory uses the words "fees and expenses." There can be little doubt that the $36,000 was awarded to compensate the plaintiffs for fees and expenses. The question is whether the probate decision foreclosed the ability of the plaintiffs to recover *any* fees and expenses, or rather,

6

did the probate decision only foreclose their ability to recover a *portion* of their fees and expenses. If the answer is the latter, then no preclusion doctrine will apply.

The difficulty of this issue lies in the less than clear language used by the probate court. As such, we are left to interpret the Memorandum Opinion and Final Order of the probate court in order to decide this issue. We regard the probate court decision as fashioning a remedy which basically maintained the status quo. In other words, we read the decision as recognizing that certain things have to be done in the execution of an estate, and the estate should have to pay for those services. In performing their duties, the personal representatives and the attorney incur expenses and earn fees from the estate. Had Diamond done his duty, he would have been entitled to reasonable fees and expenses. Since he did not perform the duties, the new co-administrators and their attorney had to perform the duties required in executing the estate. Since those duties would have to have been performed anyway, the estate is no worse off for having to pay. This can be referred to as the normal expenses involved in closing an estate.

At this point, we wish to emphasize certain facts of this case. Diamond was never paid any money by the estate of Jennie Ida Buck.[4] The co-administrators asked the probate court to make Diamond pay them for their services. If this had been allowed, Diamond would have been forced to pay the *normal* expenses incurred in closing the estate of Jennie Ida Buck, while the estate would never have paid anything to anyone. Therefore, as we perceive the record, the only issue dealt with by the probate court was the question of who pays the normal expenses involved in closing the estate. The answer to that question has to be that the estate pays.

Nancy Choate, the attorney for the estate after Diamond, alleged that she incurred fees and expenses of $7,522. The co-administrators, Sam Dawkins and Joy Roy, alleged fees and expenses totaling $14,000. We regard this total amount of $21,522 as the amount which the probate court set off against the fees and expenses to which Diamond

---

[4] Diamond repaid the $60,100 he took out of estate funds.

would have been entitled had he performed his duties.[5] We point out that no "damages" are involved because, presumably, the $21,522 in fees and expenses would have been incurred anyway.[6]

It appears that the probate court intended its decision to go no further than this point. After having disposed of the issues relating to the fees and expenses incurred in the normal course of executing the estate, the probate court left the issue of "damages" to the circuit court[7] ("to the extent that said exceptions to accounting constitute claims for damages . . . this court declines herein to make a ruling on the same, finding that the Circuit Court is the appropriate forum for those claims to be determined"). As the circuit court correctly determined, the only issue for the jury was whether the plaintiffs sustained any damages in excess of the $14,000 for Sam Dawkins and Joy Roy, and $7,522 for Ms. Choate.

Having determined that the issue of damages was correctly submitted to the jury, we turn to the question of whether the verdict was supported by the evidence. Forrester v. Stockstill, 869 S.W.2d 328, 329 (Tenn. 1994)(when reviewing a judgment based on a jury verdict, appellate courts are limited to determining whether there is material evidence to support the verdict); See also Electric Power Bd. v. St. Joseph Valley Structural Steel Corp., 691 S.W.2d 522, 526 (Tenn.1985); Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4, 5 (Tenn.1978). Ms. Choate testified that she was paid over $20,000 in fees. Of this amount, she testified that approximately $13,500 derived from issues relating to Diamond's malfeasance. According to Ms. Choate, had Diamond performed his duties as executor and attorney, the estate would not have incurred the additional amount of expenses and fees. Ms. Choate also testified that the co-administrators were paid some $20,000 more than they would have been paid absent Diamond's actions in handling the

---

[5] The circuit court adopted this same position and granted a motion for summary judgment finding that the issue of the $21,522 was barred by res judicata.

[6] This is based on the belief that someone had to do the work, and whether it was Diamond or someone else, they would have been entitled to recover an amount close to the $21,522.

[7] By using the word "damages," we indicate monies expended over and above that which would have been expended in the normal course of executing the estate.

8

estate. The testimony of Sam Dawkins indicated that he and Joy Roy incurred approximately $36,000 in fees and expenses over and above the $14,000 they requested in the probate court. Taking the strongest legitimate view of the evidence in favor of the verdict, assuming the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and discarding all to the contrary, Crabtree, 575 S.W.2d at 5, it is clear to us that the jury verdict in this case was supported by material evidence. We find no error in the jury verdict as it relates to the $36,000.

## *II. Prior suit pending*

The appellant also argues that the Circuit Court erred in denying his motion to dismiss on the basis of prior suit pending. This argument is based on the fact that the *pro se* action was still pending when the second action was filed. In essence, both claims were pending at the same time. Appellees respond by pointing out that the original action was non-suited, thereby curing any technical problems.[8]

Initially, Appellant's argument appears persuasive. The Tennessee Supreme Court has addressed the issue of prior suit pending and seems to fashion the doctrine in such a way so as to encompass the present case. See Cockburn v. Howard Johnson, Inc., 385 S.W.2d 101 (Tenn. 1964) (stating that "[i]n Tennessee, a suit is subject to a plea in abatement [9] where there is pending another suit on the same subject."). The court went on to enumerate the factors that must exist in order for a plea in abatement to lie:

> The essentials of such a plea are that the two suits must involve the identical subject matter and be between the same parties and the former suit must be pending in a court in this state having jurisdiction of the subject matter and the parties. A plea, whether it be in abatement or in bar, must contain these elements.

Id. at 102 (citing Higgins & Crownover, Tennessee Procedure in Law Cases, Sec. 518(6)).

---

[8] Appellees assert in their brief that the Appellant, acting *pro se*, suggested the two actions be consolidated in order to solve any procedural problems. Allegedly, an order was drawn up to that effect, but Diamond never signed. Appellees argue that this, notwithstanding Diamond's failure to sign the order, operated as consent on the part of Diamond to the non-suit of the first action. Although we find in favor of the appellees on this issue, we do not do so based on this argument.

[9] The Tennessee Rules of Civil Procedure replaced "pleas in abatement" with "motions for dismissal." See T.R.Civ.P. 7.03, 41.02.

In the present case, the subject matter of both circuit court cases was identical. Both cases were, in effect, malpractice cases against Diamond arising out of his performance as administrator and attorney for the estate of Jennie Ida Buck. Also, both actions were in the same court, with that court having jurisdiction over the parties and the subject matter. One seeming problem is the fact that the plaintiffs in the two cases were different. In the first case, Sam and Elizabeth Dawkins were the plaintiffs, while Sam Dawkins and Joy Roy were the plaintiffs in the second case. Even though the plaintiffs are not identical in both cases, we consider them sufficiently similar so as to make no practical difference. See Cockburn, 385 S.W.2d at 102 ("The defendants in these two cases are not identical but are in effect the same").

If we were to stop here, it might appear that Appellant's argument has validity. However, we are persuaded that taking the non-suit in the first circuit court action avoided the bar imposed by the doctrine of prior suit pending.

At common law, a plaintiff could not avoid the effect of a plea in abatement by discontinuing the prior action. Walker v. Vandiver, 181 S.W. 310 (Tenn. 1915) (citing 1 CORPUS JURIS, p. 94, § 132)("The rule at common law was to sustain the plea if it was true at the time it was filed"). However, the holding of early Tennessee cases is that discontinuance of the prior suit is sufficient to avoid any problems, regardless of whether the discontinuance came before or after the filing of the plea. Id.; See also Harris v. Penn. Nat. Hardware Mutual, 7 Tenn. App. 330 (Tenn. App. 1928); Stoll v. United States Fid. & Guar. co., 10 Tenn. App. 539 (Tenn. App. 1929). The Tennessee Supreme Court, in rejecting the common law rule, stated:

> it is manifest from the authorities above referred to that it has never been recognized by this court as a rule of law binding upon the courts of this state, and it is a rule of law opposed to the policy of our legislation in respect of remedial actions, and opposed to the general spirit of our legislation which seeks to have all controversies determined upon their merits rather than upon the technicalities of the formal procedure of the common law.

Walker, 181 S.W. at 311.

In the present case, the first circuit court action was discontinued by the order entered on August 15, 1997. The dismissal of the first action prior to the trial of the second action was sufficient to avoid any technical problems relating to the doctrine of prior suit pending. As such, we find that the trial court did not err in denying Appellant's motion to dismiss.

### *III. Disciplinary Proceeding as Evidence of Malpractice*

The Appellant asserts that the trial court erred in allowing the plaintiffs' attorney to introduce into evidence the findings of fact and judgment from a disciplinary proceeding. This error, according to the appellant, unfairly prejudiced him because it was "tantamount to a directed verdict in favor of the appellees . . . "

The first question before this court is whether the findings of the disciplinary proceeding were relevant in Appellant's malpractice trial. All relevant evidence is generally admissible. Tenn.R. Evid. 402. Rule 401 of the Tennessee Rules of Evidence provides the standard for determining whether evidence is relevant. Relevant evidence is "evidence having *any* tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." Tenn.R.Evid. 401(emphasis added). As the Advisory comments make clear, this is not a high standard. See Tenn.R.Evid. 401, Advisory Commission Comments ("The theoretical test for admissibility is a lenient one, as it should be, . . . ").

There is no doubt that the Code of Professional Responsibility ("the Code") does not set the standard for determining the civil liability of an attorney. See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400 (Tenn. 1991). However, that fact does not preclude the possibility that violation of the Code is relevant evidence in a subsequent civil case. Id. at 405 ("the standards stated in the Code are not irrelevant in determining the standard of care in certain actions for malpractice"). The Tennessee Supreme Court recognized that the Code may provide guidance in defining a lawyer's obligation to a client. Moreover, in some instances, conduct which violates the Code may also be a breach of

11

the attorney's standard of care. While violation of the Code, standing alone, will not suffice to prove civil liability, it seems clear that such a violation may be relevant evidence of a breach of the standard of care.

Appellant's primary argument is that the admission of the evidence was unfairly prejudicial and should, therefore, have been excluded. See Tenn.R.Evid. 403. Undoubtedly, the admission of the judgment and findings of fact from the disciplinary proceeding was detrimental to Appellant's defense. See Woodson v. Porter Brown Limestone Co., Inc., 916 S.W.2d 896, 907 (Tenn. 1996) (noting that extremely persuasive evidence tends to be prejudicial). However, Rule 403, by its language, places a heavy burden on the party seeking to exclude the evidence. Id.; See also Tenn.R.Evid. 403. The rule only excludes evidence if the probative value is *substantially outweighed* by the danger of unfair prejudice.

The admissibility of evidence is a matter which rests within the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993); State v. Williams, 657 S.W.2d 405, 411-12 (Tenn. 1983); Murray v. State, 377 S.W.2d 918, 920 (Tenn. 1964); Wright v. Quillen, 909 S.W.2d 804, 809 (Tenn. App. 1995); State v. Rhoden, 739 S.W.2d 6, 13 (Tenn. Crim. App. 1987). This Court will not interfere with the trial court's exercise of its discretion absent clear abuse. Williams, 657 S.W.2d at 411-12; Murray v. State, 377 S.W.2d at 920; Rhoden, 739 S.W.2d at 13. The evidence was clearly relevant to issues in dispute in the case. Also, unlike the Lazy Seven case, there was expert testimony in the present case that Diamond violated the applicable standard of care. In Lazy Seven, the expert testimony only related to a violation of the Code, not the standard of care. Lazy Seven, 813 S.W.2d at 407. Therefore, the outcome of that case does not bear on the case at bar. We find no basis for concluding that the trial judge abused his discretion in admitting the evidence.

### IV. Punitive Damages

Punitive damages are intended to punish the defendant for wrongful conduct and

to deter others from similar conduct in the future. Clanton v. Cain-Sloan Co., 677 S.W.2d 441, 445 (Tenn. 1984) (citing Liberty Mutual Ins. Co. v. Stevenson, 368 S.W.2d 760 (Tenn. 1963)). These damages refer to the nature of the defendant's conduct rather than to the injury plaintiff suffered, Breault v. Friedli, 610 S.W.2d 134 (Tenn. App. 1980), although actual damages must be found as a predicate for the recovery of punitive damages. Allen v. Melton, 99 S.W.2d 219, 225 (Tenn. 1936). In awarding punitive damages, the law blends the interests of society and the aggrieved individual and awards such damages as will operate to deter others from like conduct. Pridemark Custom Plating, Inc. v. Upjohn Co., Inc., 702 S.W.2d 566, 573 (Tenn. App. 1985) (citing Knoxville Traction Co. v. Lane, 53 S.W. 557 (Tenn. 1899)).

In Hodges v. S.C. Toof & Co., 833 S.W.2d 896 (Tenn.1992), our supreme court determined that punitive damages are available only where a defendant has acted intentionally, fraudulently, maliciously or recklessly. The court explained:

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

Hodges, 833 S.W.2d. at 901.

In Metcalfe v. Waters, the Tennessee Supreme Court recognized that punitive damages may be awarded in legal malpractice cases provided the standard established in Hodges is proven by clear and convincing evidence. 970 S.W.2d 448, 451-452 (Tenn. 1998). In reinstating the jury verdict awarding punitive damages, the Metcalfe court concluded that the attorney's "repeated transgressions and callous disregard for the rights of his clients" constituted "overwhelming evidence from which the jury could find, at a minimum, reckless conduct, that is, conduct constituting a gross deviation from the applicable standard of care." Id. at 452.

In the present case, there was abundant evidence presented regarding Diamond's failure to perform his duties as both executor and attorney. Diamond removed money from the estate without court approval. According to the expert testimony, Diamond was unjustifiably slow, if not inactive, in handling the affairs of the estate. The evidence presented could reasonably support a finding that his conduct constituted a "gross deviation from the applicable standard of care." See Metcalfe, 970 S.W.2d at 452. As such, we find no error in the award of punitive damages.

**Conclusion**

The judgment entered by the trial court is hereby affirmed in all respects. Costs of this appeal are taxed to the Appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.

14