IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS MARCH 29, 2011

# T. VERNER SMITH v. JERRY F. GARDNER

**Direct Appeal from the Chancery Court for Madison County**
**No. 64928     Allen W. Wallace, Senior Judge by designation**

---

**No. W2009-00972-COA-R3-CV - Filed April 27, 2011**

---

This appeal involves a suit for dissolution of a real estate partnership. The defendant-appellee also filed several counterclaims against the plaintiff, who is an attorney. After a bench trial, the trial court dissolved the partnership and found that the defendant-appellant was liable for one-half of the partnership's debts and expenses. The court dismissed the counterclaims. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Beau Edward Pemberton, Dresden, Tennessee, for the appellant, Jerry F. Gardner

Louis W. Ringger, Jr., Jackson, Tennessee, for the appellee, T. Verner Smith

**OPINION**

**I.  FACTS & PROCEDURAL HISTORY**

T. Verner Smith is a licensed attorney.  Attorney Smith represented Jerry F. Gardner and Mr. Gardner's wife in an automobile accident case.  Mr. Gardner approached Attorney Smith about the possibility of obtaining a loan against the case in order to purchase real estate.  Attorney Smith told Mr. Gardner that he could not loan him the money, but after further discussions, the parties decided to purchase the real estate together as partners, doing business as "Smith & Gardner Rentals."

On February 3, 2006, the parties executed a document prepared by Attorney Smith, entitled "Westmoreland Real Estate Venture," which stated that the parties desired to form a partnership concerning the purchase and rental of a duplex located at an address known as Westmoreland Place in Jackson, Tennessee.  The document stated that, in order to form the joint venture, Attorney Smith and Mr. Gardner would each make a $4,623 capital contribution, which equaled one-half of the cash down payment required for the purchase of the property.  The document provided that Attorney Smith and Mr. Gardner would each own an equal 50% interest in the property.  It further provided that the rent received from the property would be deposited into a joint bank account, in the name of the venture, and that the property mortgage, insurance, repairs, and improvements would be paid out of the joint account.  The parties agreed to equally divide excess funds remaining in the joint account after one year.  Thereafter, any profits from future rental proceeds that remained after payment of the mortgage and maintenance costs, and any profits realized upon the sale of the property, were to be divided equally.  The document stated that the venture would terminate upon the sale of either party's interest in the property, but either party was given a "first right of refusal" to purchase the interest of the other partner at fair market value prior to any sale to an outside third party.

After the February 2006 purchase of the Westmoreland property, Attorney Smith and Mr. Gardner purchased two additional properties as partners in approximately April 2006.  Attorney Smith prepared two additional documents with regard to the purchases, entitled "222 West Grand Real Estate Venture" and "237 Prospect Avenue Real Estate Venture."  These documents also provided that Attorney Smith and Mr. Gardner desired to form a partnership concerning the purchase and rental of the properties.  The documents generally provided that the parties would share equally in the costs of any down payments or closing costs, and that such contributions would constitute capital contributions to the joint venture.  Each party would own a 50% interest in each of the two properties.  Again, the rental proceeds were to be deposited into the parties' joint bank account in the name of the venture, with the mortgage to be paid from the account.  The net proceeds of the rent were to be

divided equally between the parties. The parties agreed to equally share the costs of insurance, repairs, and improvements to the properties. If a property was sold, all profits were to be divided equally.

These two subsequent agreements contained a more detailed termination clause, which provided for the venture's termination if either party sold his interest in the property, filed for bankruptcy protection, or defaulted under any provision of the contract. In the event of such an occurrence, the "remaining party" was provided a "first right of refusal" to purchase the other party's interest in the property. The agreements provided that if either party defaulted in an obligation under the agreement, "the non-defaulting party, at this option, [sic] shall notify the defaulting party in writing of his intent to exercise his option to enforce this right of first refusal."

After the purchase of the three properties in early 2006, Attorney Smith and Mr. Gardner jointly purchased twelve additional properties together. However, they did not execute any additional written partnership agreements. Attorney Smith kept the financial records and provided legal services for the partnership, such as preparing closing documents, financing paperwork, and detainer warrants when necessary, without compensation for his services. Mr. Gardner performed duties such as showing the properties to prospective tenants, collecting rent, and supervising the condition of the properties.

In August of 2007, the partnership began to experience financial losses. On September 17, 2007, Attorney Smith filed a complaint for partition of the parties' real property and dissolution of the partnership. He alleged that the parties had been doing business as Smith Gardner Rentals "with the express intent to equally share the profits and expenses of operating their business with one another." Attorney Smith alleged that Mr. Gardner had failed to perform certain duties for the partnership in violation of the parties' agreement, including, among other things, a failure "to make capital contributions to the partnerships and joint ventures of the parties despite [Attorney Smith's] request for such contributions and despite the fact that the partnership or ventures do not have sufficient capital resources to pay mortgages and expenses, thereby forcing [Attorney Smith] to make the vast majority of all capital contributions[.]"

Mr. Gardner filed an answer and counterclaim. In his answer, Mr. Gardner admitted that the parties had formed a partnership for the purpose of purchasing, managing, renting, and selling properties, and he admitted that the parties agreed to go into business together with the express intent to equally share the profits and expenses of the business. He further admitted that the parties could no longer agree as to how the partnership should be conducted and that the partnership should be dissolved with the parties' property divided between them. Mr. Gardner also set forth counterclaims against Attorney Smith for, among other things,

breach of contract, legal malpractice, breach of fiduciary duty, and breach of the duties of good faith and fair dealing.

A bench trial was held on February 11, 2010. By the time of trial, the parties' properties had been foreclosed upon, such that the request for partition was moot. However, the court was required to consider the request for dissolution of the partnership and division of its debts, in addition to the counterclaims filed by Mr. Gardner.

The trial court heard testimony from Attorney Smith, his office manager who kept records for the partnership, Mr. Gardner, and Mr. Gardner's former attorney. Attorney Smith testified that although the parties did not execute written agreements after the purchase of the first three properties, the parties' course of dealing did not change, and they continued to operate by oral agreements and understandings. He testified that the parties had agreed to buy the properties equally, share the profits equally, and share the expenses and losses equally. Attorney Smith testified that when the partnership began losing money, he asked Mr. Gardner to pay his one-half of the partnership's obligations, but Mr. Gardner refused. Attorney Smith testified that since the partnership began in February 2006, he had personally contributed $67,755.35 to the partnership for the payment of its expenses and debts. He testified that Mr. Gardner had made some financial contributions to the partnership, but that overall, Mr. Gardner withdrew $4,018.09 more from the partnership than he contributed. Attorney Smith introduced documentation to support his testimony, and his office manager who kept the partnership's records testified as to these figures as well. In summary, Attorney Smith testified that his contributions exceeded Mr. Gardner's contributions by about $71,333, and he claimed that Mr. Gardner should be required to pay his one-half of the expenses, in the amount of $35,886.74. Attorney Smith also testified that the partnership still had outstanding accounts payable at the time of trial in the amount of $8,789.89, and he asked that Mr. Gardner be required to pay one-half of that amount, which would equal $4,344. Regarding the termination of the partnership, Attorney Smith testified that he had offered Mr. Gardner the right of first refusal regarding the purchase of the properties on numerous occasions.

Mr. Gardner's testimony about the parties' agreements was quite different. He said that his understanding of the partnership agreement was that he was to contribute "sweat equity" to the partnership while Attorney Smith made all of the capital contributions, and that the parties would share profits equally. Mr. Gardner claimed that none of the parties' contracts required him to make any capital contributions or pay one-half of the expenses. Mr. Gardner disputed that he owed Attorney Smith for one-half of the claimed expenses, in the amount of $35,000, stating that he did not believe that Attorney Smith had paid that amount toward partnership expenses. However, he conceded that he had no proof to suggest that Attorney Smith contributed less than he claimed.

-4-

Mr. Gardner claimed that Attorney Smith never offered him a right of first refusal and that such failure constituted a breach of the parties' contract. He explained, "he should have offered me my money or offered to say he wanted to get out and either buy him out or whatever. Instead, he filed the lawsuit." Mr. Gardner later testified that Attorney Smith had discussed the properties with him but refused to "split them up," as Mr. Gardner could only obtain financing to purchase "one, two, maybe three properties." Mr. Gardner also conceded that he failed to attend two partnership meetings that were scheduled with Attorney Smith in the latter part of 2007. As for damages, Mr. Gardner testified that he was entitled to "the value of half of the properties as of the time of dissolution." He later said that he was seeking his "equity" as of the date of dissolution, and he said that he had calculated his damages to be $193,000, although he did not explain how he reached that figure.

Mr. Gardner's former attorney, Robert Lynch, testified as well. Mr. Gardner offered Mr. Lynch as an expert on the standard of care required of attorneys for purposes of his legal malpractice claim.[1] Mr. Lynch testified that it was his opinion that Attorney Smith breached the standard of care by failing to prepare written partnership documents for all fifteen of the properties purchased by the parties. Mr. Lynch conceded that the three documents that were prepared did fairly protect Mr. Gardner's interest in the event of dissolution because they required an offer of first refusal. However, with respect to the other transactions, Mr. Lynch claimed that Mr. Gardner was "harmed, if you will, when those documents were not prepared." Mr. Lynch went on to opine that the parties had "ignored" the three written agreements when they were faced with dissolution of the partnership, because, according to the evidence as Mr. Lynch understood it, Attorney Smith had not offered Mr. Gardner the right of first refusal. In sum, Mr. Lynch opined that Attorney Smith should have prepared and utilized proper documents to govern the parties' rights in the event of a partnership dissolution so that the parties could have avoided litigation altogether. Mr. Lynch said that he considered the filing of the lawsuit to be a breach of the standard of care. As for damages, Mr. Lynch said that Mr. Gardner had been damaged by having to pay attorney's fees in the litigation.

The trial court entered a final order dissolving the partnership on March 31, 2010. The court accepted the figures submitted by Attorney Smith and found that Mr. Gardner owed $35,886.74 for his one-half of the capital contributions to the partnership that were previously paid by Attorney Smith for partnership expenses and debts. The court also found that Mr. Gardner owed $4,394.95 for his one-half of the partnership's outstanding accounts payable. The court entered a judgment against Mr. Gardner for these amounts and dismissed all of Mr. Gardner's counterclaims against Attorney Smith. Mr. Gardner timely filed a notice

---

[1] Mr. Gardner's attorney explained that Mr. Gardner's allegations of legal malpractice were not concerning the fact of the partnership itself, but "the way it was conducted[.]"

of appeal.

## II. ISSUES PRESENTED

Mr. Gardner presents the following issues for review on appeal:

1. Whether the trial court erred in dismissing Mr. Gardner's counterclaims when the record reflects sufficient evidence for the court to have considered the counterclaims on the merits;
2. Whether the trial court erred in refusing to consider evidence of proceedings before the Board of Professional Responsibility relevant to this matter;
3. Whether the trial court erred in failing to consider Mr. Gardner's evidence regarding his contributions in the form of "sweat equity" when determining the respective contributions of the parties and the respective judgments in this matter.

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2010); ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. ***Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC***, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." ***Id.*** We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. *Dismissal of Mr. Gardner's Counterclaims*

In Mr. Gardner's first issue on appeal, he asserts that the trial court erred in dismissing his counterclaims when the record contained sufficient evidence for the court to consider the counterclaims on the merits. Mr. Gardner argues that the trial court's dismissal amounted to an involuntary dismissal pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure and that the court failed to apply the specific legal criteria applicable to such a dismissal. He also argues that he presented sufficient evidence such that an involuntary dismissal was inappropriate in this case. In sum, he argues that he "presented proof sufficient for the trial court to at least consider the merits of [his] counterclaims prior to ruling upon them." He asks this Court to remand the matter for further hearing.

We disagree with Mr. Gardner's characterization of the trial court's action. The record before us does not contain any reference to a motion to dismiss or an involuntary dismissal. The trial court heard testimony from Attorney Smith and his witness and from Mr. Gardner and his witness, and it considered Attorney Smith's deposition, in addition to three volumes of exhibits, prior to ruling. There is nothing to suggest that the court failed to consider the merits of Mr. Gardner's claims or applied the wrong analysis. Mr. Gardner claims that the trial judge failed to discuss the proof relating to his counterclaims in its bench ruling or final order. Our review of the record does not support this assertion. As noted above, Mr. Gardner's counterclaims included allegations of legal malpractice, breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing, for which he sought compensatory and punitive damages. At the conclusion of the trial, the trial judge stated that he found "absolutely no evidence here that would sustain any kind of punitive damages or compensatory damages." The judge referred to the expert testimony of Mr. Lynch, offered by Mr. Gardner in support of his counterclaims, and stated, "I think he's a competent lawyer, but we disagree." The judge referenced the poor economy and said, "I can't see at all where that – Mr. Smith had damaged Mr. Gardner, except the situation just turned out to be that way due to their deal they entered into." The judge found that it was Mr. Gardner who "wasn't doing his job" and "wasn't carrying his end of the deal." The judge then stated that he was going to dismiss the malpractice claim, as he found "nothing wrong with the contract or any kind of malpractice."

In sum, we reject Mr. Gardner's contention that the trial court failed to consider the merits of his counterclaims.

### B. *Evidence of Proceedings before the Board of Professional Responsibility*

Next, Mr. Gardner argues that the trial court erred in refusing to allow evidence

regarding a Board of Professional Responsibility hearing based upon a complaint filed against Attorney Smith by Mr. Gardner.[2] Mr. Gardner cites ***Roy v. Diamond***, 16 S.W.3d 783, 790-91 (Tenn. Ct. App. 1999), in which the Court explained:

> There is no doubt that the Code of Professional Responsibility ("the Code") does not set the standard for determining the civil liability of an attorney. See *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400 (Tenn. 1991). However, that fact does not preclude the possibility that violation of the Code is relevant evidence in a subsequent civil case. *Id.* at 405 ("the standards stated in the Code are not irrelevant in determining the standard of care in certain actions for malpractice"). The Tennessee Supreme Court recognized that the Code may provide guidance in defining a lawyer's obligation to a client. Moreover, in some instances, conduct which violates the Code may also be a breach of the attorney's standard of care. While violation of the Code, standing alone, will not suffice to prove civil liability, it seems clear that such a violation may be relevant evidence of a breach of the standard of care.

The Court went on to note that the admissibility of evidence is a matter which rests within the sound discretion of the trial court, and we will not interfere with the court's decision absent a clear abuse of that discretion. ***Id.*** at 791.

Here, the trial judge stated at the beginning of the trial that he would consider the issue of legal malpractice, but, he stated, "We're not trying a Board of Professional Responsibility case here today." Nevertheless, Mr. Gardner's expert, Mr. Lynch, referred to the Rules of Professional Conduct in his testimony without objection. He testified that the Rules do not absolutely prohibit an attorney from engaging in business with a client, but he said that in such a case, an attorney is required to prepare proper documentation to protect the client's interest. Mr. Lynch testified that this was an attorney's duty that would be encompassed within the applicable standard of care.

On appeal, Mr. Gardner does not specify what evidence he wished to submit regarding the hearing before the Board of Professional Responsibility, and he did not make an offer of proof before the trial court. He simply states that "the trial court refused to entertain or consider any evidence of the Appellee's Board of Professional Responsibility action, even though those proceedings and evidence would constitute admissible evidence that would have aided the Appellant's counterclaims." Without knowing what evidence Mr. Gardner wished to introduce, we decline to find that the trial court abused its discretion in handling

---

[2] At the time of trial, the Board had not issued a final decision in the matter.

the matter.

### C. Mr. Gardner's "Sweat Equity"

Finally, Mr. Gardner argues on appeal that the trial court erred in failing to consider the proof of his in-kind or "sweat equity" contributions to the partnership when determining the amount of the judgment entered against him. Mr. Gardner points out that "Black's Law Dictionary defines 'capital contribution' as '[c]ash, property, or *services* contributed by partners to a partnership[.]'" *See **Thompson v. Davis**,* 308 S.W.3d 872, 882 (Tenn. Ct. App. 2009). He also claims that this case is analogous to a divorce case and asks us to apply the principles applicable to contributions of a spouse to a marriage as set forth in Tennessee Code Annotated section 36-4-121(c)(5).

We find these arguments unconvincing. Although Mr. Gardner did testify that the parties had agreed for him to contribute "sweat equity" while Attorney Smith paid all of the capital contributions, the trial court clearly rejected his version of the parties' agreement. The trial judge specifically stated that it found Attorney Smith's office manager, who testified in support of Attorney Smith, to be a "terribly impressive witness and extremely credible," while expressing doubts as to the accuracy of Mr. Gardner's testimony. We will defer to the trial court's assessment of the witnesses' credibility.

Attorney Smith testified that the parties agreed to equally share the partnership's profits as well as its expenses and losses. Attorney Smith's testimony is supported by the three agreements executed by the parties at the beginning of the partnership, which required the parties to equally contribute to the down payments and closing costs on the properties and provided that the mortgage, insurance, repairs and improvements would be paid from their joint account. The second and third agreement specifically provided that the parties would equally share the costs of insurance, repairs, and improvements to the properties. We also note that Mr. Gardner admitted in his answer that the parties agreed to go into business together with the express intent to equally share the profits and expenses of the business. Thus, regardless of the definition of a "capital contribution," or the rules that apply in divorce actions, Mr. Gardner was responsible for paying one-half of the amount paid for the partnership's debts and expenses. We reject Mr. Gardner's assertion that he was entitled to some sort of credit for his "sweat equity."

# V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Jerry F. Gardner, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.