# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 8, 2014 Session

## STATE OF TENNESSEE v. BRANDON JONES

**Direct Appeal from the Circuit Court for Madison County**
**No. 12-34     Donald H. Allen, Judge**

**No. W2013-00333-CCA-R3-CD  -  Filed November 26, 2014**

The defendant, Brandon Jones, was convicted of possession of marijuana with intent to sell, a Class E felony, and possession of a deadly weapon with intent to employ it in the commission of a dangerous felony, a Class D felony.  He was sentenced to mandatory consecutive sentences of two years and four years for the respective convictions.  On appeal, the defendant contends that: (1) the trial court erred by allowing evidence regarding the defendant's custodial statements; (2) the trial court erred by allowing hearsay testimony regarding statements made by the passenger in the defendant's car; (3) the trial court erred in allowing a police officer to testify as an expert and offer opinion testimony; and (4) the evidence is insufficient to support the two convictions.  Following review of the record, we affirm the judgments of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., and ROBERT L. HOLLOWAY, Sp.J., joined.

C. Mark Donahoe, Jackson, Tennessee, for the appellant, Brandon Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jerry Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Factual Background and Procedural History**

In the early morning hours of July 8, 2011, Officer Dennis Ballentine and Officer Rodney Savage of the Jackson Police Department were on patrol near the intersection of Briandfield and Tinker Hill Streets. The officers were part of the street crimes unit, which worked high crime areas in a proactive rather than a reactive manner like standard patrol units. During this time, the officers observed a silver Dodge Intrepid traveling at a high rate of speed for the conditions. It appeared that the car was going to run a stop sign, but the driver suddenly stopped the car just inside the intersection. Officer Ballentine noticed that the tint on the car windows appeared to be illegally dark. Based upon his belief that the tint was illegal, Officer Ballentine initiated a traffic stop of the vehicle.

Officer Ballentine approached the vehicle on the driver's side and immediately noticed a strong odor of marijuana, which he was very familiar with. Officer Savage approached the passenger side of the car and also noticed the odor. Officer Ballentine asked the defendant, the driver of the vehicle, if he had smoked any marijuana or had any in the car. The defendant responded negatively. Nonetheless, because of the odor, Officer Ballentine asked the defendant to step outside the car. He conducted a pat down search of the defendant and felt a bulge, which he believed to be drugs, in the cargo pocket of the defendant's shorts.

At that point, the defendant was taken into custody. He was handcuffed, and his pockets were emptied. Officer Ballentine found a large bag of marijuana in the defendant's right cargo pocket and another large bag in his left cargo pocket, which contained three smaller individually wrapped bags of marijuana. The drugs field tested to be 18.9 grams of marijuana. In the defendant's front pocket, the officer found $904 cash in small and varied denominations. No rolling papers or other objects indicating personal use of marijuana were found.

Once the defendant and his passenger, Mr. Love, were secured, the officers searched the interior of the car. They found a .45 caliber handgun with a laser sight on the floorboard between the two front seats. Upon questioning about the gun, Mr. Love denied any knowledge of it. The defendant responded by telling Officer Ballentine that he knew the loaded gun was present, but it was not his. Rather, the defendant claimed to be holding it for someone else, but he refused to identify the person he was holding it for. The defendant was taken to jail, and Mr. Love was released. The defendant was not issued a citation regarding his window tinting.

The defendant was indicted by a Madison County grand jury for possession of marijuana with intent to sell and/or deliver, possession of a deadly weapon with the intent to employ it in the commission of a dangerous felony, and being a convicted felon in possession of a handgun. The defendant chose to proceed to trial. Prior to trial, the State dismissed the charge of being a convicted felon in possession of a firearm.

At the trial, the State called both Officers Ballentine and Savage to testify to the above events. Additionally, during direct examination, the State asked Officer Ballentine why he had arranged the evidence collected from the defendant in a certain manner to take the picture of the various evidence. He responded that it was done "[m]ainly to show the intent to resell the or to sell the marijuana. You can see a large amount of cash. Personal users don't usually carry around cash that they earn from the sale of marijuana." The defendant objected to Officer Ballentine expressing an opinion when he had not been qualified as an expert witness. The court sustained the objection unless Officer Ballentine testified as to his qualifications. At that point, the State began questioning Officer Ballentine regarding the officer's experience and training. He testified that he had been to narcotics training where he was taught to tell the different factors to differentiate between simple possession and possession with the intent to sell or deliver. He also stated that he had five and a half years' experience "on the street" and had encountered situations in which he was forced to make that determination on at least a "weekly basis." Officer Ballentine noted that some of the factors to look for were how the drugs were packaged, individual bags versus bulk packaging, large amounts of cash in smaller denominations, and large amounts of the drug. Following this, the trial court overruled the defendant's objection to the testimony.

The defendant presented no proof at trial. Following deliberations, the defendant was convicted as charged by the jury on the remaining two counts. The trial court later sentenced the defendant to two years for the drug charge and to four years at 100% for the firearm charge. The court also ordered that the two sentences be served consecutively for a total effective sentence of six years.

The defendant subsequently filed a timely motion for new trial challenging only the sufficiency of the convicting evidence. After review, the trial court denied the motion, and the defendant filed the instant appeal with this court.

**Analysis**

On appeal, the defendant has enumerated six issues for review, which the State effectively combines into four. First, the defendant contends that the trial court improperly allowed testimony regarding the defendant's statements to police after he was taken into custody. He also claims that the trial court improperly admitted hearsay statements when the

officer was allowed to testify regarding Mr. Love's statement to the officer regarding his knowledge of the weapon. The defendant also puts forth three reasons that the court improperly allowed Officer Ballentine to offer opinion testimony as an expert witnesses. Lastly, the defendant contends that the evidence is insufficient to support his two convictions.

## I. Defendant's Custodial Statements

First, the defendant challenges the admission of the verbal statement he made to Officer Ballentine while in custody that the gun was not his but that he was holding it for someone. He contends that the statement should not have been admitted because the State failed to prove that the statement was "freely and voluntarily given and was in compliance with the United States Supreme Court['s] ruling in *Miranda v. Arizona . . . .*" The defendant acknowledges that he did not object to the statement's admission at trial but urges this court to grant relief under the plain error standard of review. As the State points out, in addition to waiver by failing to object, the defendant also waived review of the issue by failing to include it in the motion for new trial. Tenn. R. App. P. 3(e); Tenn. R. App. P 36(a). We agree. As an initial matter, we note that there is no dispute that the defendant had been arrested and was in custody at the time he responded to the officer's questions.

The defendant is correct that, waiver aside, our supreme court has held that appellate courts are not precluded from reviewing an issue under the plain error doctrine. Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for new trial or assigned as error on appeal." *See also* Tenn. R. Evid. 103(d). This court may only consider an issue as plain error when all five of the following factors are met:

> (1) the record must clearly establish what occurred in the trial court;
> (2) a clear and unequivocal rule of law must have been breached;
> (3) a substantial right of the accused must have been adversely affected;
> (4) the accused did not waive the issue for tactical reasons; and
> (5) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); *see also State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the *Adkisson* test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 64 (internal quotations and citation omitted).

It is the accused's burden to persuade an appellate court that the trial court committed plain error. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). Further, complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. *Smith*, 24 S.W.3d at 283. The Advisory Commission Comments to Tennessee Rule of Appellate Procedure 13(b) suggest that the discretionary authority for the declaration of plain error "be sparingly exercised."

We agree with the defendant that:

> In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The procedural safeguards must include warnings prior to any custodial questioning that an accused has the right to remain silent, that any statement he makes may be used against him, and that he has the right to an attorney.

*State v. Blackstock*, 19 S.W.3d 200, 207 (Tenn. 2000); *see also State v. Sawyer*, 156 S.W.3d 531, 533 (Tenn. 2005). "Custodial"means that the subject of the questioning is either in "custody or otherwise deprived of his freedom by the authorities in any significant way." *Miranda*, 384 U.S. at 478.

Again, there is no dispute in the record that the defendant was in fact in custody when he answered Officer Ballentine's question about the firearm. Officer Ballentine was clear in his testimony that the defendant was taken into custody based upon the drugs found on his person, and, only after that, did he search the car and discover the weapon. Thus, that point is not in contention. Additionally, it is not in contention that there was no objection made to the admission at trial, no motion to suppress was filed challenging the statement, and the issue was not raised in the motion for new trial.

The defendant argues that his answer to the question, the statement that he was aware of the gun's presence and was merely holding it for someone else, should not have been admitted because he was custody when it was made and because no *Miranda* warnings were given. He asserts that the State failed to show that the statement was freely and voluntarily given and was in compliance with *Miranda*.

The defendant's argument, however, must fail because it fails to recognize the burden of proof on plain error review. *See Bledsoe*, 226 S.W.3d at 355. It is the defendant who

bears this burden. *Id*. Because of the failure to object to the admission of or to have a suppression hearing, the record lacks the necessary evidence to allow review. Basically, the record is inadequate to conduct plain error review of the evidentiary issue. Thus, while the defendant has established that he was in fact in custody and entitled to *Miranda* warnings at the time of the questioning, he has failed on appeal to show that he was not afforded those rights. There is no mention made anywhere in the record whatsoever of *Miranda* warnings. The issue was not raised in a motion to suppress, and Officer Ballentine was never asked if he in fact administered those rights. There is simply nothing on the record to establish that "a clear and unequivocal rule of law" was breached. Moreover, we are also unable to reach a determination that, even if error had been established, that it was of such magnitude that the results of the trial would have been affected. Mr. Love denied knowledge of the gun, a fact which was admitted into evidence. The most reasonable inference is that the gun belonged to the defendant, especially in light of the illegal narcotics found on his person and that he was driving his vehicle in a high crime area late at night. Based upon this, the defendant is not entitled to relief under plain error review.

The State asks this court to go further and explicitly hold that reviewing courts should not consider any suppression issue as a matter of plain error. Although citing no Tennessee cases which have explicitly held such, the State does cite several federal cases. *See United States v. Burke*, 633 F.3d 984, 988 (10th Cir. 2011), *cert. denied*, 131 S. Ct. 2130 (2011) (a suppression argument raised for the first time on appeal is waived absent a showing of good cause for why it was not raised before the trial court); *United States v. Yousef*, 327 F.3d 56, 125 (2d. Cir. 2003) ("we will find complete waiver of a suppression argument that was made in an untimely fashion before the district court unless there is a showing of cause"); *United State v. Chevez-Valencia*, 116 F.3d 127, 130 (5th Cir. 1997) ("A defendant who fails to make a timely suppression motion cannot raise the claim for the first time on appeal."). The State notes that an important reason this rule was adopted was to avoid placing the State in the difficult position of defending itself against a potentially meager record. The State notes that it bears the burden of proof in a suppression hearing, and if the issue is not raised, it is deprived of a hearing at which to present proof focused on that issue. It further contends that, as here, such a rule would preclude defendants from trying to use the absence of evidence in the record to their advantage.

We agree that the rule suggested by the State has some merit. As evidenced in the case before us, *Miranda* warnings are now considered common-place, and are often assumed to be given. In other words, it is not something the State puts forth evidence of in every trial. Rather, any irregularities should be raised by the defense, and then the State bears the burden of establishing that the warnings were in fact given as required by law. However, we see no need for a specific rule barring plain error review in every suppression or evidentiary issue, especially in light of the fact that, in actuality, defendants will likely be barred from

relief because of an inability to put forth evidence of a violation of the rule or an adequate record for plain error review. Because it is not necessary to our determination of this issue in this case, we decline to adopt such a blanket rule.

## II. Hearsay Statements of Mr. Love

Next, the defendant contends that the trial court erred in admitting the verbal statement made by Mr. Love, the passenger in the car, to police officers that he had no knowledge that the firearm was in the car. At trial, Officer Ballentine was asked if he questioned Mr. Love with regard to the weapon. Over the objection of the defendant, the court allowed the hearsay statement into evidence. The defendant claims this admission was error under Tennessee Rule of Evidence 803. The defendant contends that the State should have subpoenaed Mr. Love to testify directly "regarding what was a tremendously important issue regarding possession and ownership of the firearm." The State contends, however, that the defendant is not entitled to relief because he failed to demonstrate that the admission of the statement denied him substantial justice. Even though the defendant did object to the statement's admission at trial, he failed to raise the issue in his motion for new trial. As such, the issue is also waived and can only be reviewed through plain error review.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible at trial unless it falls under one of the exceptions to the rule against hearsay. Tenn. R. Evid. 802. "'The determination of whether a statement is hearsay and whether it is admissible through an exception to the hearsay rule is left to the sound discretion of the trial court.'" *State v. Thomas*, 158 S.W.3d 361, 400 (Tenn. 2005) (quoting *State v. Stout*, 46 S.W.3d 689, 697 (Tenn. 2001)). Accordingly, this court will not reverse the trial court's ruling on this issue absent a clear showing of an abuse of discretion. *Id*.

The State concedes, and we agree, that the statement is hearsay. At the trial, the defendant objected to the statement as hearsay, and the trial court overruled the objection with no other statements made on the record regarding the court's decision, *i.e.*, if the statement was not hearsay or if it was admissible under a hearsay exception. However, the defendant, by failing to include the issue in his motion for new trial, has again waived the issue under normal appellate review.

Reviewing the issue under the plain error standard, we are unable to conclude that he is entitled to relief. The defendant himself stated that he was aware of the gun and was holding it for some unknown person. Moreover, he was the driver of the vehicle and was the one found in possession of the illegal narcotics. Thus, his possession of the firearm was

sufficiently established without the hearsay testimony of Officer Ballentine. As such, the defendant cannot show that review of the issue is necessary to do substantial justice, as required for plain error review.

## III. Testimony of Officer Ballentine

Next, the defendant presents three issues challenging the opinion testimony of Officer Ballentine: (1) whether the trial court erred in allowing expert opinion testimony from Officer Ballentine regarding his opinion as to the ultimate issue before the jury as to whether or not the marijuana possessed in this case was with the intent to sell or deliver; (2) whether the trial court erred in allowing opinion testimony by Officer Ballentine without him being qualified as an expert witness; and (3) whether the trial court erred in allowing opinion testimony from Officer Ballentine without notice to the defendant that the officer would be called as an expert witness and give opinion testimony. The State argues that the trial court properly allowed the officer to offer opinions on whether the defendant was selling marijuana because Officer Ballentine easily qualified as an expert witness, and the defendant established no prejudice from the lack of notice. We agree.

The admission of expert testimony is governed by Tennessee Rules of Evidence 702 and 703. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 provides that expert testimony shall be disallowed "if the underlying facts or data indicate lack of trustworthiness." Tenn. R. Evid. 703.

In *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997), our supreme court recited several nonexclusive factors that a court may consider in determining the reliability of scientific testimony, including:

> (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

*Brown v. Crown Equipment Corp.*, 181 S.W.3d 268, 274 (Tenn. 2005) (quoting *McDaniel*, 955 S.W.2d at 265). The *Brown* court identified two other factors that a trial court may consider in assessing the reliability of an expert's methodology: (1) the expert's

qualifications for testifying on the subject at issue, and (2) the connection between the expert's knowledge and the basis for the expert's opinion. *Id*. (citations omitted).

"[T]he allowance of expert testimony, the qualifications of expert witnesses, and the relevancy and competency of expert testimony are matters which rest within the sound discretion of the trial court." *State v. Rhoden*, 739 S.W.2d 6, 13 (Tenn. Crim. App. 1987) (citing *Murray v. State*, 377 S.W.2d 918, 920 (Tenn. 1964); *Bryant v. State*, 539 S.W.2d 816, 819 (Tenn. Crim. App. 1976); *State v. Holcomb*, 643 S.W.2d 336, 341 (Tenn. Crim. App. 1982)). As such, we will not disturb the trial court's ruling absent a clear showing that it abused its discretion in admitting the testimony. *Id*.; *see also State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002).

The following colloquy occurred during the testimony of Officer Ballentine:

Q       Okay. And explain for the jury why you would take the picture arranged the way it - - the way the items are arranged.
A       Mainly to show the intent to resell the or to sell the marijuana. You can see a large amount of cash. Personal users don't usually carry around cash that they earn from the sale of marijuana.
        [Defense Counsel]: Your Honor, I'm going to object to his expressing his opinion. He is not qualified as an expert witness.
        The Court: Well, I'll sustain the objection unless he can testify as to qualifications so.
Q       Have you been trained on the distinction between a simple possession and possession with the intent to sell or deliver?
A       I've been to narcotics training, as well as my experience on the street.
Q       All right. What sort of training have you had? I guess detail your experience.
A       Just a basic narcotics course just to - - . . . .Basically to inform officers on things to look for, things to bundle together as far as, you know, the difference between a personal user versus somebody that's intending to make revenue from the sale of illegal or illicit drugs.
Q       As part of your training, how often would you say you've been trained on things like that?
A       Sporadically throughout my five and a half years. I don't have a specific count.
Q       All right. And in your five and a half years as far as dealing with narcotic cases such as this, how many times would you say you've actually encountered situations where you've had to use your training, made that distinction.

A      At least on a weekly basis, you know. . . .

Q      All right. And are you trained on things to look for to distinguish between someone who's simply possessing marijuana and possessing with the intent to sell or deliver?

A      That's correct.

Q      What things are you trained to look for?

A      You look for things like the - - in this particular case, marijuana, you look for it to be individually wrapped. You look for things like scales to weigh it out as far as to know what to sell it for. You look for large or denominations of cash in separate denominations so that you can give better change and then, of course, large quantities, you know, the marijuana, the more you have, the harder it is to smoke; therefore, the larger amount is generally, especially over 14 grams, is considered resale.

[Defense Counsel]: Your Honor, he's tstifying as to his opinion during this voir dire.

[The State]: Your Honor, he's testifying as far as his training, what he's - -

The Court: All right. Overruled. The objection is overruled.

Thereafter, the State continued its questioning of the witness.

As pointed out by the State, while the defendant did object to the testimony at trial, the issue was not raised in his motion for new trial. Thus, our review is again limited to plain error. *See* Tenn. R. App. P. 3(e).

The defendant's argument ignores that this court has previously held that when the State establishes that an officer possesses the necessary training, experience, and familiarity with illicit drug trade, the officer may testify about matters relating to the business of buying, selling, trading, and use of illegal drugs pursuant to Rule 702 of the Tennessee Rules of Evidence. *State v. Elliot*, 366 S.W.3d 139, 147 (Tenn. Crim. App. Apr. 9, 2010); *see also State v. Gayle Thomas Crawford*, No. W2009-00263-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 859 (Tenn. Crim. App. Oct. 7, 2009); *State v. Daniel Potin*, W2005-01100-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 444 (Tenn. Crim. App. June 7, 2006), *perm. app. denied* 2006 Tenn. LEXIS 1087 (Tenn. Nov. 13, 2006); *State v. Samuel L. Giddens*, No. M2002-00163-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 311 (Tenn. Crim. App. Nov. 15, 2004); *State v. Timothy Murrell*, No. W2001-02279-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 597 (Tenn. Crim. App. Jul. 2, 2003). Despite the defendant's argument to the contrary, Officer Ballentine was qualified properly under this standard. He testified that he had been to narcotics training and had received "on the street" training for five and one half years. He indicated that he dealt with these issues on at least a weekly basis during that period of time.

The trial court, although never specifically referring to the officer as an expert, clearly reached the same conclusion based upon the fact that the objection was overruled. While the better practice may have been to allow the defendant to voir dire Officer Ballentine, he did not suffer prejudice because of the failure. The defendant failed to make a request to be given the opportunity, and he was afforded an opportunity to cross-examine and attempt to damage the officer's credibility or experience.

The defendant relies upon the case of *State v. Dougherty* to support his argument on appeal. In that case, this court reversed the trial court's decision to allow a highway patrolman to testify as an expert with regard to accident reconstruction. *State v. Carol H. Dougherty,* 1989 Tenn. Crim. App. LEXIS 9 (Tenn. Crim. App. Jan. 9, 1989). However, that case is distinguishable from the defendant's case and does not lend itself to supporting the defendant's argument. The determination in that case was based upon a continuing duty of the State to provide the information under Rule 16(a)(1)(D) of the Rules of Criminal Procedure. It is simply not relevant to our review of the issues.

The defendant also complains that Officer Ballentine's testimony encompassed one of the ultimate issues of fact in the case, *i.e.*, whether the defendant possessed the drugs with the intent to sell or deliver them. However, "[t]estimony in the form of an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tenn. R. Evid. 704 (emphasis added). Here, the testimony was admissible because it aided the jury in understanding facts about drug sales which they were unlikely to have known. Thus, the defendant is not entitled to relief based upon that argument.

Lastly, the defendant also complains that the testimony was improperly allowed because he was not given notice that Officer Ballentine would testify as an expert. While he was listed on the witness list supplied to the defendant, he was not designated as an expert. The State acknowledges that Officer Ballentine was not designated as an expert on the witness list, nor were any other witnesses. We cannot conclude that, based upon this, the defendant has shown that he was prejudiced or entitled to relief. As an aside, the above cited law which allows officers to give opinion testimony in this area has become so common-place, *i.e.*, it is now expected that police will testify as to the certain methods and processes in the drug trade, we question whether designation as an expert is required for the defendant to be "on notice." Regardless, the defendant has simply failed on this record to show that any consideration of any alleged errors is "necessary to do substantial justice."

## IV. Sufficiency of the Evidence

Lastly, the defendant complains that the evidence is insufficient to support his two

convictions. However, his argument with regard to the drug conviction is that the evidence is insufficient because it was based on the inadmissible testimony of Officer Ballentine. His argument as to the firearm conviction is that is was based upon the inadmissible hearsay testimony of Mr. Love regarding his knowledge of the weapon. The defendant argues that without these inadmissable statements, the proof is insufficient to support the convictions. However, we have previously addressed the defendant's claims regarding the admissibility of the statements and found them to be without merit. Nonetheless, we will conduct a general sufficiency review despite the fact that the defendant makes no argument in support of such.

When the sufficiency of the evidence is challenged, the relevant question is "whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379 (internal quotation omitted). If the evidence is insufficient to support a finding of guilt beyond a reasonable doubt, the conviction must be set aside. Tenn. R. App. 13(e). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

The defendant was convicted of possessing a controlled substance with intent to sell or deliver and possession of a deadly weapon with intent to employ it during the commission of a dangerous felony. Tennessee Code Annotated section 39-17-417(a) states that it is an offense for a defendant to knowingly possess a controlled substance with the intent to sell the controlled substance. The Code further defines marijuana as a controlled substance.

T.C.A. § 39-17-415(a)(1) (2010). Further, an inference may be made from the amount of a controlled substance possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance was possessed with the purpose of selling or otherwise dispensing of the substance. T.C.A. § 39-17-119.

In this case, the defendant was found to be in possession of over half an ounce of marijuana. Some of the drug had been packed into smaller bags, actions normally taken for the purpose of resale. The defendant was also in possession of a large sum of cash in smaller denominations, which suggested he had previously sold part of his drugs and been paid or needed it to make change for future sales. Finally, the defendant had no drug paraphernalia in his possession which would indicate that he intended to consume the marijuana for his own personal use. The facts, taken together, are more than sufficient to allow a jury to reach the conclusion that the defendant committed the crime of possession of a controlled substance with intent to sell or deliver.

Likewise, the evidence is sufficient to support the conviction for possession of a deadly weapon with the intent to employ it during the commission of a dangerous felony. First, we note that possession of a controlled substance with the intent to sell, as the defendant was convicted of, is a dangerous felony in Tennessee. T.C.A. § 39-17-1324(i)(1)(L).

The proof clearly shows that the defendant was in possession of a firearm during the time he was committing the felony of possessing a controlled substance with the intent to sell or deliver. The only element that could be challenged is that of intent. However, as the State notes, intent may be inferred from both direct and circumstancial evidence. *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). The necessary intent to support a conviction for this offense may be proven by the circumstances surrounding the carrying of the weapon. *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). The purpose of going armed should be determined from the facts of each particular case. *Hill v. State*, 298 S.W.2d 799, 799-800 (Tenn. 1957).

In this case, the evidence establishes that the defendant, while committing the dangerous felony, had a loaded gun with a round in the chamber under the seat of his car. He was driving around late at night in a high crime area in possession of the gun and the drugs. The gun was fitted with a laser sight. From these facts, the record supports the jury's conclusion that the defendant possessed the gun, a deadly weapon, with the intent to employ it during the commission of selling or delivering a controlled substance.

**CONCLUSION**

Based upon the foregoing, the judgment of the trial court is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE