IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2020 Session

## PETER R. CULPEPPER v. BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-168-19**         **Kristi M. Davis, Judge**

———————————————————

### No. E2019-01932-COA-R3-CV

———————————————————

In this legal malpractice action, the trial court granted judgment on the pleadings in favor of the defendants, determining that the plaintiff had waived any conflict of interest in his signed engagement letter. The court also ruled that the plaintiff's legal malpractice claims were barred by the applicable statute of limitations. The plaintiff has appealed. Upon our review of the pleadings and acceptance as true of all well-pleaded facts contained in the plaintiff's complaint and the reasonable inferences that may be drawn therefrom, we determine that the plaintiff has pled sufficient facts in support of his claim of legal malpractice. We therefore reverse the trial court's grant of judgment on the pleadings with regard to the plaintiff's legal malpractice claim.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part, Affirmed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Peter R. Culpepper, Knoxville, Tennessee, Pro Se.

P. Edward Pratt, Knoxville, Tennessee, and Sam Berry Blair and Ryan A. Strain, Memphis, Tennessee, for the appellees, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.; John S. Hicks; Tonya Mitchem Grindon; Martha L. Boyd; Samuel Lanier Felker; Lori B. Metrock; and Lori H. Patterson.

---

[1] The plaintiff asserted other claims that were also dismissed by virtue of the trial court's grant of judgment on the pleadings. We note that the plaintiff has not appealed the grant of judgment in favor of the defendants with respect to those claims.

# OPINION

## I. Factual and Procedural Background

On May 9, 2019, the plaintiff, Peter R. Culpepper, filed a complaint in the Knox County Circuit Court ("trial court") against the following defendants: Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("the Baker firm"); John S. Hicks; Tonya Mitchem Grindon; Martha L. Boyd; Samuel Lanier Felker; Lori B. Metrock; and Lori H. Patterson (collectively, "Defendants"). In his complaint, Mr. Culpepper alleged legal malpractice arising out of Defendants' simultaneous representation of Mr. Culpepper and his former employer, Provectus Biopharmaceuticals, Inc. ("Provectus").[2] Mr. Culpepper filed an amended complaint on May 31, 2019, wherein he alleged, *inter alia*, that Defendants had represented him while also representing and advising Provectus to his detriment and that Defendants had continued to represent Provectus to his detriment after they withdrew from his representation.

In his amended complaint, Mr. Culpepper explained that he was employed as the Chief Financial Officer for Provectus from 2004 until sometime in 2016 when he was named interim Chief Executive Officer. Mr. Culpepper maintained that position with Provectus until his employment termination effective December 28, 2016. According to Mr. Culpepper, Defendants represented him concerning matters before the United States Securities and Exchange Commission ("SEC") on August 4, 2016, and August 11, 2016. Mr. Culpepper alleged that on August 15, 2016, Defendants met with an independent forensic accountant and discussed Mr. Culpepper "with respect to the SEC and other attorney-client privileged and confidential matters WITHOUT his knowledge" (emphasis in original).

Additionally, Mr. Culpepper alleged that Defendants discussed matters regarding Mr. Culpepper and the SEC with Provectus's Board of Directors in 2016, without Mr. Culpepper's knowledge, while simultaneously representing Mr. Culpepper. Mr. Culpepper further averred, *inter alia*, that Defendants presented fabricated documentation to support his ultimate termination for cause by Provectus in December 2016. Mr. Culpepper claimed that Defendants had represented him and Provectus simultaneously despite an obvious conflict of interest and had continued to represent Provectus following termination of his representation on a substantially related matter. Additionally, Mr. Culpepper claimed that Defendants had concealed documentation in support of his claims until May 2018. Mr. Culpepper thus sought damages for legal malpractice, defamation, and false light invasion of privacy; a declaratory judgment regarding the proper amount

---

[2] Although Mr. Culpepper generally refers to the actions of "defendants," most of the allegations in his complaint are directed toward the Baker firm as a whole. The individually named defendants are attorneys who were apparently employed by the Baker firm at the time of Mr. Culpepper's representation.

owed by him to Provectus pursuant to their settlement agreement; and indemnification for his attorney's fees.

On July 3, 2019, Defendants filed a motion seeking leave to file their answer and accompanying exhibits under seal. In their answer, Defendants denied any liability and asserted various affirmative defenses, including expiration of the applicable statutes of limitation and waiver. Defendants attached to their answer an engagement letter signed by Mr. Culpepper on August 31, 2016. On August 13, 2019, Defendants filed a motion for judgment on the pleadings, asserting, *inter alia*, that Mr. Culpepper had waived any conflicts of interest in his August 31, 2016 engagement letter and had consented to Defendants' continued representation of Provectus, even if such representation was ultimately adverse to Mr. Culpepper's interests. Defendants also asserted that expiration of the applicable one-year statute of limitations barred Mr. Culpepper's malpractice claims.

On September 30, 2019, the trial court entered an order granting judgment on the pleadings in favor of Defendants and dismissing all of Mr. Culpepper's claims. In its order, the court stated in pertinent part:

> The Court rules that in the August 31, 2016 engagement, waiver and consent letter, [Mr. Culpepper] waived all conflicts of interest and consented to Defendants' representation of its other clients, including those clients adverse to [Mr. Culpepper]. [Mr. Culpepper] specifically agreed that he carefully read the foregoing letter and considered all the information necessary and useful in determining whether or not to consent to the representations outlined above. He was encouraged to consult with independent counsel regarding this waiver and consent letter and represented he was fully aware of his legal rights in this regard. The letter also provides, "[u]pon reasoned reflection, I hereby voluntarily consent to the representations by Baker Donelson as outlined above." Therefore, the Court rules [Mr. Culpepper] voluntarily waived all conflicts of interest, which was the crux of the entire Amended Complaint.
>
> Further, the Court also rules that the claims in the Amended Complaint are barred by the statute of limitations.
>
> Further, the Court rules that the libel, defamation, and invasion of privacy claims were all determined adversely to [Mr. Culpepper] by the Arbitrator and therefore these claims are estopped.

The trial court thereby dismissed all of Mr. Culpepper's claims with prejudice. Mr. Culpepper timely appealed.

## II. Issues Presented

Mr. Culpepper presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by granting judgment in favor of Defendants without allowing Mr. Culpepper to argue against a stay of discovery when he was replying to Defendants' motions.

2. Whether the trial court erred by granting judgment in favor of Defendants when Mr. Culpepper purportedly had not knowingly and voluntarily waived all conflicts of interest.

3. Whether the trial court erred by failing to apply the discovery rule to toll the limitations period based on Defendants' alleged fraudulent concealment of their actions.

## III. Standard of Review

Tennessee Rule of Civil Procedure 12.03 provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In reviewing a trial court's grant of judgment on the pleadings under Rule 12.03, we are bound to regard as false all allegations of the moving party that are denied by the non-moving party, and to accept all well-pleaded facts of the non-moving party, and the reasonable inferences that may be drawn therefrom, as true. *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). "Conclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *Id*. In our review of this case, "all of the facts alleged by the Plaintiff in this case must be taken as true and the issue then before us is whether upon those facts the Plaintiff's complaint states a cause of action that a jury should have been entitled to decide." *Id*. An appellate court "should uphold granting the [Rule 12.03] motion only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). "A trial court's legal conclusions regarding the adequacy of a complaint are reviewed de

- 4 -

novo without a presumption of correctness." *Stewart v. Schofield*, 368 S.W.3d 457, 462-63 (Tenn. 2012).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Id*. at 463 (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We respect Mr. Culpepper's decision to proceed without benefit of counsel and note that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young*, 130 S.W.3d at 63). Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV. Motion for Protective Order

Mr. Culpepper asserts that the trial court erred by granting judgment on the pleadings without considering the merits of Defendants' motion seeking a protective order, which Mr. Culpepper urges was filed "for the express purpose of avoiding [his] discovery requests." In his appellate brief, Mr. Culpepper proceeds to cite federal precedent analyzing the proper standard for a court's grant of a stay of discovery when a party has filed or intends to file a case-dispositive motion. Defendants contend that Mr. Culpepper's arguments lack merit because (1) the trial court never granted Defendants' motion seeking a protective order, finding it to be pretermitted due to the grant of judgment on the pleadings and (2) Mr. Culpepper has provided an insufficient record to permit review of this issue in any event. Based upon our thorough review of the record, we agree with Defendants on both points.

The record before us contains neither Defendants' motion seeking a protective order nor any responsive pleadings filed by Mr. Culpepper. Defendants assert that there were additional memoranda and other documents filed by the parties relative to this issue that likewise were not included in the record. Moreover, no order disposing of Defendants' motion is contained in the record; instead, the trial court judge noted in her oral ruling granting judgment on the pleadings that such action "pretermit[ted] . . . the issue with respect to the motion for protective order . . . ."

Inasmuch as the trial court never ruled on the motion for protective order, there is nothing for this Court to review. As a Court of appeals and errors, "we are limited in authority to the adjudication of issues that are presented and decided in the trial courts." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976). Furthermore, even if the trial court had rendered a decision on this issue, "[t]his Court's authority to review a trial court's

decision is limited to those issues for which an adequate legal record has been preserved." *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004).

To the extent that Mr. Culpepper's argument could be construed as advocating that further discovery was required before the trial court considered a grant of judgment on the pleadings, this Court has previously rejected such an argument. In *Sakaan v. Fedex Corp.*, Inc., No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at *5 (Tenn. Ct. App. Dec. 21, 2016), this Court explained:

> A motion for judgment on the pleadings involves the consideration of nothing other than what its title suggests; the motion requests that a court grant judgment based on the pleadings alone. Accordingly, discovery is not necessary to sharpen any factual issues, and the trial court's resolution of the motion is not dependent on anything other than the pleadings.

We therefore conclude that Mr. Culpepper's first issue on appeal is without merit.

## V. Waiver and Legal Malpractice Claims

Mr. Culpepper asserts that the trial court erred by granting judgment on the pleadings in favor of Defendants with regard to Mr. Culpepper's legal malpractice claims, which were based on an alleged conflict of interest in Defendants' representation of Mr. Culpepper and Provectus. Mr. Culpepper postulates that (1) Defendants breached Tennessee's Rules of Professional Responsibility with regard to conflicts of interest and (2) he did not and could not knowingly and voluntarily waive the conflicts. In response, Defendants posit that the waiver contained in Mr. Culpepper's engagement letter, undisputedly executed by Mr. Culpepper, was a sufficient basis for the trial court's ruling.

As Mr. Culpepper points out, this Court has previously addressed the issue of whether an alleged breach of a disciplinary rule equates to legal malpractice:

> There is no doubt that the Code of Professional Responsibility ("the Code") does not set the standard for determining the civil liability of an attorney. *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400 (Tenn. 1991). However, that fact does not preclude the possibility that violation of the Code is relevant evidence in a subsequent civil case. *Id.* at 405 ("[T]he standards stated in the Code are not irrelevant in determining the standard of care in certain actions for malpractice"). The Tennessee Supreme Court recognized that the Code may provide guidance in defining a lawyer's obligation to a client. Moreover, in some instances, conduct which violates the Code may also be a breach of the attorney's standard of care. While violation of the Code, standing alone, will not

suffice to prove civil liability, it seems clear that such a violation may be relevant evidence of a breach of the standard of care.

*Roy v. Diamond*, 16 S.W.3d 783, 790-91 (Tenn. Ct. App. 1999).

With regard to a claim of legal malpractice, this Court has previously elucidated:

To establish a *prima facie* cause of action for legal malpractice, the plaintiff has the burden of proving each of the following elements: (1) a duty owed by the lawyer; (2) breach of that duty; (3) damages suffered by the plaintiff; (4) the attorney's breach as the cause in fact of those damages; and (5) the attorney's breach as the proximate, or legal, cause of the plaintiff's damages. *See Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001). The issues at the heart of this case, therefore, are whether [the attorney] breached his duty to [the client] and if so, whether that breach caused [the client] to suffer damages.

A plaintiff can show breach of the duty owed by an attorney by demonstrating that "the attorney's conduct fell below that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction." *See Sanjines v. Ortwein and Assocs., P.C.*, 984 S.W.2d 907, 910 (Tenn. 1998). Furthermore, with reference to legal malpractice, a plaintiff has been determined to have suffered damages or injury as the result of "the loss of a legal right, remedy or interest, or the imposition of a liability." *See Parnell v. Ivy*, 158 S.W.3d 924, 927 (Tenn. Ct. App. 2004) (quoting *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)). "An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (quoting *State v. McClellan*, 113 Tenn. 616, 85 S.W. 267, 270 (1905)). This Court has previously explained that "the mere possibility or probability of injury . . . is not enough for a cause of action for legal malpractice to accrue." *Caledonia Leasing & Equip. Co., Inc. v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt*, 865 S.W.2d 10, 17 (Tenn. Ct. App. 1992). "In order to prove damages in a legal malpractice action, a plaintiff must prove that he would have obtained relief in the underlying lawsuit, but for the attorney's malpractice." *Shearon v. Seaman*, 198 S.W.3d 209, 214 (Tenn. Ct. App. 2005). The plaintiff must also demonstrate a causal connection between the attorney's negligence and the plaintiff's injury. *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 407 (Tenn. 1991).

*Jones v. Allman*, 588 S.W.3d 649, 655-56 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. Sept. 19, 2019).

The trial court's grant of judgment on the pleadings concerning Mr. Culpepper's legal malpractice claims was predicated in part on his waiver of any conflict of interest in the signed engagement letter. Defendants attached this engagement letter to their answer filed in this matter. As such, the engagement letter became a part of that pleading and was properly considered by the trial court in its analysis of Defendants' motion for judgment on the pleadings.[3] *See Bartley v. Nunley*, No. E2019-01694-COA-R3-CV, 2020 WL 5110302, at *7 (Tenn. Ct. App. Aug. 28, 2020).

The engagement letter provides as follows in pertinent part:

1. Scope of Representation.

   You will be our client in this matter. We will be engaged to advise you in connection with the SEC investigation entitled Provectus Biopharmaceuticals, Inc. ("Provectus") (H0-13000). Our acceptance of this engagement (the "Matter") does not involve representing you or your interests in any other matter.

2. Fees and Expenses.

   Provectus Biopharmaceuticals Company, Inc. (the "Company") has agreed to pay our fees and costs. We will, therefore, seek payment from the Company.

3. Conflicts.

   We are a large firm with offices in a number of cities in the United

---

[3] Tennessee Rule of Civil Procedure 10.03 provides:

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

(Emphasis added.)

States, and we represent many other companies and individuals. Given the breadth of our practice, it is possible that during the time we are representing you, some of our present or future clients will be engaged in transactions, or encounter disputes, with you or the Company. You agree that we may continue to represent, and may undertake in the future to represent, existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those matters are directly adverse to you. At no time would we use or disclose any confidential or proprietary information relating to our representation of you in connection with our representation of another client without your written consent, as appropriate. You should know that, in similar engagement letters with many of our other clients, we have asked for similar agreements to preserve our ability to represent you.

4.  Joint Representation.

As you know, we are representing you jointly with the Company, Timothy Scott and Eric Wachter. You have consented to this joint representation. In a situation where our firm represents multiple clients jointly in the same matter, we are free to share confidential information communicated to us by one client with the other joint clients in the course of and in furtherance of the joint representation. We would expect to share information we receive from you with the Company, but we will not necessarily share with you information that we receive from other clients, and you will not be entitled to obtain any confidential information provided to us by any other joint client either during the joint representation or thereafter. Please contact me immediately if you have any objections or concerns regarding this approach.

Based on the information we now have, we are not aware of any actual and present conflicts of interest between you and either the Company, Timothy Scott or Eric Wachter that would preclude this joint representation. However, in any situation in which a lawyer represents more than one client, there is the potential for the clients to have or to develop conflicting interests. If you are aware or become aware of any potential or actual conflict of interest with the Company, Timothy Scott or Eric Wachter, please notify us promptly. Likewise, if we become aware that a conflict has arisen or become apparent, we will notify you promptly.

If a conflict should arise between you and the Company, we will be required to withdraw from representing you, and you may need to engage another attorney to represent you. You agree that, should this occur, we would be free to continue to represent the Company and other joint clients

(except in litigation directly adverse to you in this or a substantially related matter) and that we and they may use any information we have obtained during our representation of you, including any confidential information you may provide to us. This may include sharing information you provide to us with the Company and advising the Company with respect to any issues raised by such information. In addition, if a conflict should arise between you and the Company, Timothy Scott or Eric Wachter, we may be required to withdraw from representing one or more of you, and you may need to engage another attorney to represent you.

You also understand that we may be asked to represent other individuals or entities who, by virtue of their current or former employment with or other relationship to the Company, may seek our advice in connection with these Matters, and you consent to such representation on the same terms as set forth above. You agree to waive any claim of conflict based on our past, current, and future representation of the Company and its current or former officers, employees, directors, etc. As noted above, our fees and costs for representing you in the Matter will be paid by the Company, and you agree that you waive any claim of conflict based upon our receipt of fees from the Company.

You should be aware that joint representation of multiple clients may result in significant benefits for each client, but it may also result in certain risks that might not arise if each client had his or its own separate counsel. Possible benefits may include a common strategy, access to privileged and other information held by other clients in the group, various other tactical advantages, and shared legal fees and costs. There are also potential risks. For example, as explained above, a conflict of interest between or among clients could arise or become apparent, which may require Baker Donelson to withdraw from representing one or more of the joint clients. In addition, the Company has decided as a condition of this joint representation, that confidential or privileged information disclosed to Baker Donelson by individual clients will be shared with the Company and that confidential or privileged information of the Company will not necessarily be shared with individual clients, including yourself. The Company may disclose, or direct us to disclose, to the SEC, or other federal or state regulatory agencies or other third parties confidential or privileged information provided by you and could decide to use such information in a manner that could be disadvantageous to you. And, although you will participate in decisions regarding our representation of you, you will not be consulted on all decisions regarding our representation of the Company or other joint clients in the Matter.

While the Company has agreed that Baker Donelson may represent you in the Matter, you are of course free at any time to consult with any other attorney, including with respect to whether you should enter into this agreement, and to make different arrangements for your representation.

5. Conclusion of Representation.

Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to our professional obligations to you under applicable rules of professional conduct and the terms and conditions set forth in this agreement. Unless previously terminated, our representation of you will terminate upon completion of the services for the Matter described above in paragraph 1. It is understood and agreed that in the event of any termination or withdrawal, we will be entitled to receive any unpaid fees and expenses from the Company. Subsequent invoices sent to collect expenses and/or unpaid balances, and/or accounting records or client lists shall not extend the attorney-client relationship. Unless you engage us after termination of this matter, we will have no continuing obligation to advise you with respect to future legal developments, such as changes in the applicable laws or regulations, which could have an impact on your future rights and liabilities.

A provision at the conclusion of the engagement letter states as follows:

I have carefully read the foregoing letter, considered all information necessary and useful in determining whether or not to consent to the representations outlined above. I have been encouraged to consult with independent counsel regarding this consent to representation, and I am fully aware of my legal rights in this regard. Upon reasoned reflection, I hereby voluntarily consent to the representations by Baker Donelson as outlined above.

Mr. Culpepper's signature appears thereon, dated August 31, 2016. Mr. Culpepper does not dispute that he signed the engagement letter, although he asserts in his brief that he does not specifically remember doing so.

The parties agree that Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.7 ("RPC 1.7"), applies in this situation. RPC 1.7 states in pertinent part:

(a)     Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

- 11 -

(1)  the representation of one client will be directly adverse to another client; or

(2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1)  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)  the representation is not prohibited by law;

(3)  the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)  each affected client gives informed consent, confirmed in writing.

Mr. Culpepper has not disputed that Defendants terminated their representation of him in December 2016. Because Defendants allegedly continued their representation of Provectus following termination of their representation of Mr. Culpepper in 2016, the parties are in accord that Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.9 ("RPC 1.9") would also apply in this situation. RPC 1.9 states as follows:

a)  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.[4]

---

[4] Comment 3 to RPC 1.9 provides that matters are "substantially related" if they "involve the same transaction or legal dispute or other work the lawyer performed for the former client" or "if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known."

- 12 -

(b) Unless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

    (1) whose interests are materially adverse to that person; and

    (2) about whom the lawyer had acquired information protected by RPCs 1.6 and 1.9(c) that is material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

Defendants do not dispute that a conflict of interest arose between Provectus and Mr. Culpepper at some point; in fact, the existence of such a conflict was the reason provided by Defendants for terminating their representation of Mr. Culpepper in December 2016. Defendants assert, however, that Mr. Culpepper waived all conflicts of interest with other clients of the Baker firm and gave informed consent to Defendants' continued representation of Provectus in the event such a conflict arose. Although we agree with Defendants that Mr. Culpepper acknowledged his voluntary agreement to the waiver contained in the engagement letter, such acknowledgement is not determinative of the issue of whether Mr. Culpepper's consent was informed.

"Informed consent" is defined in the Rules of Professional Conduct as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Tenn. Sup. Ct. R. 8, RPC 1.0. As our Supreme Court has explained:

[O]ur rules permit a waiver of a conflict of interest if "(1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents in writing after consultation." Tenn. Sup. Ct. R. 8, RPC 1.7(b). In order to waive a conflict of interest, the petitioner must demonstrate that he fully understands the nature of the conflict and its effect; that he understands his right to the appointment of other counsel if

- 13 -

necessary; and that, notwithstanding the potential ill effects of continued representation by counsel of record, he desires to proceed. A valid waiver must, of course, not only be made knowingly, but also be made fully and voluntarily in the context of the case.

*Frazier v. State*, 303 S.W.3d 674, 683-84 (Tenn. 2010) (other internal citations omitted).

Although there is a dearth of case law interpreting the Rules of Professional Conduct in relation to the factual scenario presented in this matter, we note that the comments to RPC 1.7 are instructive to our analysis. For example, comment 6 to RPC 1.7 states: "Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." As such, it is clear that a client can provide informed consent in order to enable an attorney to undertake concurrent representation that is adverse to that client in certain circumstances. However, when such consent is given, "the information provided [to the client] must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved." *See* RPC 1.7, cmt. 18.

In the case at bar, Mr. Culpepper executed an acknowledgement stating that he had "carefully read" the engagement letter and had "considered all information necessary and useful in determining whether or not to consent to the representations" stated therein. Mr. Culpepper further acknowledged that he had been encouraged to consult with independent counsel regarding his consent to representation. Mr. Culpepper affirmed that he had, upon "reasoned reflection," "voluntarily consent[ed] to the representations by Baker Donelson as outlined above."

The question that remains unanswered, however, is whether Mr. Culpepper was provided information concerning "the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege" or "the potential ill effects of continued representation by counsel of record" such that he could "fully understand[] the nature of the conflict and its effect." *See Frazier*, 303 S.W.3d at 683-84; RPC 1.7, cmt. 18.

Mr. Culpepper posits that his consent was not "informed" in that he was not afforded sufficient information concerning the nature and extent of the conflict and its effect on his individual representation. We note that according to the engagement letter, although Mr. Culpepper expressly agreed that the Baker firm "would expect to share information [the Baker firm] receive[d] from [Mr. Culpepper] with [Provectus]," he also agreed that the Baker firm would not necessarily share information received from

- 14 -

Provectus with Mr. Culpepper. In addition, we note again that the engagement letter expressly provides:

> If a conflict should arise between you and the Company, we will be required to withdraw from representing you, and you may need to engage another attorney to represent you. You agree that, should this occur, we would be free to continue to represent the Company and other joint clients (except in litigation directly adverse to you in this or a substantially related matter) and that we and they may use any information we have obtained during our representation of you, including any confidential information you may provide to us. This may include sharing information you provide to us with the Company and advising the Company with respect to any issues raised by such information. . . .

> You agree to waive any claim of conflict based on our past, current, and future representation of the Company and its current or former officers, employees, directors, etc. As noted above, our fees and costs for representing you in the Matter will be paid by the Company, and you agree that you waive any claim of conflict based upon our receipt of fees from the Company.

The letter further explained that although there were benefits to joint representation, there were also risks, such as "that confidential or privileged information disclosed to Baker Donelson by individual clients will be shared with the Company and that confidential or privileged information of the Company will not necessarily be shared with individual clients, including yourself." In addition, the letter provided that Provectus "may disclose, or direct us to disclose, to the SEC, or other federal or state regulatory agencies or other third parties confidential or privileged information provided by you and could decide to use such information in a manner that could be disadvantageous to you." Moreover, the letter clarified that Mr. Culpepper would "not be consulted on all decisions regarding our representation of the Company or other joint clients in the Matter."

Despite the aforementioned language, the letter also included that "[b]ased on the information we now have, we are not aware of any actual and present conflicts of interest between you and either the Company, Timothy Scott or Eric Wachter that would preclude this joint representation." The letter further provided that "if we become aware that a conflict has arisen or become apparent, we will notify you promptly." However, according to the factual allegations contained in Mr. Culpepper's amended complaint, Defendants had met with a forensic accountant and discussed issues concerning Mr. Culpepper on August 15, 2016, without Mr. Culpepper's knowledge. This meeting occurred before Mr. Culpepper signed the conflict waiver on August 31, 2016. Mr. Culpepper alleged in his amended complaint that this meeting with the forensic

accountant ultimately resulted in the fabrication of documentation to support Mr. Culpepper's termination from Provectus for cause. Mr. Culpepper further alleged that he was never made aware of the meeting until documents were disclosed in May 2018. We note that Defendants did not withdraw from their representation of Mr. Culpepper until after his termination from Provectus in December 2016.

Accepting these allegations as true, as we must when reviewing a grant of judgment on the pleadings, we conclude that Mr. Culpepper's complaint stated sufficient facts to support his claim. We reiterate that this Court "should uphold granting the [Rule 12.03] motion only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief." *Young*, 130 S.W.3d at 63. Mr. Culpepper effectively alleged that Defendants engaged to represent him and continued that representation despite dealing simultaneously with Provectus and third parties to his detriment, thus establishing a potential violation of RPC 1.7. Mr. Culpepper further alleged that Defendants continued to represent Provectus on a substantially related matter after they withdrew from representing him and that Provectus's interests were materially adverse to his interests as a former client, thus establishing a potential violation of RPC 1.9. Such violations of the Rules of Professional Conduct can be evidence of a breach of the standard of care, *see Roy*, 16 S.W.3d at 790-91, and Mr. Culpepper claimed that he was damaged by wrongful termination from his employment and other monetary losses as a result of Defendant's breach of duty. We therefore conclude that Mr. Culpepper properly stated a claim for legal malpractice in his amended complaint. *See Jones*, 588 S.W.3d at 655-56.

Moreover, Mr. Culpepper argues that even if it could be shown that he provided informed consent to the conflict in this matter, not all conflicts are waivable. We agree, observing that comment 15 to RPC 1.7 provides: "Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest." Representation of a client "is prohibited if, in the circumstances, the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation." *Id*. Analysis of this issue requires further factual determination that is inappropriate for judgment on the pleadings.

For the foregoing reasons, we conclude that the trial court improperly granted judgment on the pleadings to Defendants concerning Mr. Culpepper's claim of legal malpractice. We therefore reverse the trial court's grant of judgment on the pleadings to Defendants regarding this issue.

## VI. Statute of Limitations

Mr. Culpepper has also raised an issue concerning the trial court's alternative ruling that Mr. Culpepper's legal malpractice claims were barred by the applicable one-

year statute of limitations. Mr. Culpepper contends that the trial court erred by failing to apply the discovery rule to toll the statute of limitations based on Defendants' fraudulent concealment of their August 2016 meeting with the forensic accountant, which occurred without Mr. Culpepper's knowledge and to his detriment.

Our Supreme Court summarized Tennessee's discovery rule applicable to legal malpractice claims in *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532-33 (Tenn. 1998):

> When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.
>
> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.
>
> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an

injury as a result of wrongful conduct." *Carvell* [*v. Bottoms*], 900 S.W.2d [23,] 29 [(Tenn. 1995)] (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury* [*v. Bacardi*], 953 S.W.2d [671,] 678 [(Tenn. 1997)]. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

(Other internal citations omitted.)

In the instant case, Mr. Culpepper stated in his amended complaint that he was unaware of Baker Donelson's meeting with the forensic accountant, which he alleged resulted in the disclosure of privileged communications and, ultimately, the fabrication of documents to justify his termination for cause from Provectus, until documents were disclosed in May 12, 2018 revealing these facts. Mr. Culpepper further alleged that the Baker firm "fraudulently concealed the notes of any meetings it had with [the forensic accountant] about [Mr. Culpepper] until [the forensic accountant] revealed the notes" and that he was not made aware of Defendants' meeting with the forensic accountant until May 12, 2018. Mr. Culpepper has alleged that he therefore could not have and did not discover "facts sufficient to put a reasonable person on notice that he ha[d] suffered an injury as a result of wrongful conduct" until that time. *See John Kohl & Co.*, 977 S.W.2d at 533 (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)). Mr. Culpepper filed his original complaint on May 9, 2019, which was within one year of the date he claimed to have discovered such facts.

Defendants counter in their appellate brief that Mr. Culpepper knew that he had been terminated in December 2016 and knew that Defendants had continued to represent Provectus in a manner adverse to Mr. Culpepper in 2017 and early 2018. However, these facts do not necessarily establish that Mr. Culpepper was on notice that he had been injured by conduct <u>attributable to Defendants</u> at that time. Defendants further assert that Mr. Culpepper made statements during his March 15, 2018 deposition, taken in the course of arbitration proceedings, accusing Defendants of much of the same conduct alleged in the amended complaint. We note, however, that the trial court neither referred to nor appeared to consider Mr. Culpepper's deposition when granting judgment on the pleadings, which was proper inasmuch as Rule 12.03 directs that the court cannot consider "matters outside the pleadings" when ruling on such motion. *See Bartley*, 2020 WL 5110302, at *8 ("[I]f the trial court had considered [a potential witness's] deposition transcript or his notes, the effect would have been to convert Plaintiffs' motion for a judgment on the pleadings to a motion for summary judgment."). We are likewise bound to consideration of the pleadings alone on appeal. *See Local TV Tenn. LLC v. N.Y.S.E.*

*Wolfchase LLC*, No. W2017-00675-COA-R3-CV, 2018 WL 1721866, at *4 (Tenn. Ct. App. Apr. 9, 2018).

Based solely on the facts alleged in Mr. Culpepper's amended complaint, which must be taken as true, we determine that the trial court erred in granting judgment in favor of Defendants with regard to Mr. Culpepper's legal malpractice claim predicated upon the statute of limitations and in failing to determine that the discovery rule could be applied. We therefore reverse this portion of the trial court's judgment as well.

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's grant of judgment on the pleadings in favor of Defendants with regard to Mr. Culpepper's legal malpractice claim. The balance of the trial court's judgment, which was not appealed, remains in effect. Costs on appeal are assessed to the appellees, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.; John S. Hicks; Tonya Mitchem Grindon; Martha L. Boyd; Samuel Lanier Felker; Lori B. Metrock; and Lori H. Patterson. This case is remanded to the trial court for further proceedings consistent with this opinion and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE